FRANK C. CARROLL *vs.* MARIO NARDOLILLO.

JANUARY 19, 1942.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker & Condon, JJ.

Moss, J.   This is an action of the case, brought originally in a district court, to recover for the damage caused to the plaintiff's motor car by a collision which occurred between it and a motor car operated by the defendant, and which the plaintiff alleges was caused by the negligence of·the defendant, while the plaintiff was in the exercise of due care.

The declaration is in three counts, the forms of negligence alleged in them respectively being the operation of the defendant's car at unreasonable and excessive speed; his failure to have his car under ordinary and proper control and inattention in his driving and management of it; and failure to apply his brakes properly, when a collision between the two cars was imminent. The defendant simply pleaded not guilty to each of these counts.

On appeal from the district court, the case was tried before a justice of the superior court and a jury; and the trial resulted in a verdict for the plaintiff. A motion for a new trial on the usual grounds was filed by the defendant, and was denied by the trial justice in a decision filed by him. The case is now before us on the defendant's bill of exceptions, containing eight exceptions, of which the exception mainly relied upon at the hearing before us is the eighth, to the denial of the motion for a new trial. There is no objection by the defendant to the amount of the verdict, if the plaintiff is entitled to any verdict.

According to the plaintiff's testimony the collision occurred in the following manner: On May 28, 1940, about three o'clock in the afternoon, he was operating his automobile along Cemetery street in the city of Providence, a little north of the North Burial Ground, in order to get to North Main street. His wife was sitting beside him. He had first crossed the long bridge over the railroad tracks and had then proceeded ahead, into Cemetery street, and then down a hill and bearing to the right, until he was moving in a southerly or southeasterly direction. When he reached or nearly reached the foot of the hill, moving at a speed of about twenty miles per hour, he was approaching a sharp curve to an easterly direction, that is, to his left. Then, somewhere about fifty yards before reaching that curve, he saw a car, which proved to·be the car driven by the defendant, with his finacee and another young woman sitting beside him, and which was coming "wide around the curve."

The plaintiff then immediately put on his brakes and slowed down his car. He expected that the other car would turn to its right. However, it did not, but came straight on, not very rapidly. He then stopped his car entirely and the other car ran directly into the front of his car, badly damaging both cars. When the collision occurred, his car was twelve feet from the curbing on his left side of the street and the defendant's car was thirteen and one half feet from the same curbing.

There was no curbing on the plaintiff's right side of the street. There was an electric light pole on that side and he testified that he would not say that when he passed it, just before he stopped his car, the pole was more than six or seven feet from his car. He also testified that that side of the street on which he was traveling was unfinished; that there was no mark for the curbstone; that there was no white line in the middle of the street; and that he was on the right side of the street.

According to the plaintiff's testimony, given in putting in his original case as the first witness, the defendant told the

police, who were investigating the accident right after it occurred, that he had seen a child on the sidewalk and was afraid that this child was going to run into the street and so he turned out to his left. The defendant *testified* that he had not noticed any child.

The plaintiff's testimony was corroborated by his wife, and in particular she testified that she thought that the street, on their right side of it, was not finished but had a lot of gravel on it. She also testified that, immediately after the collision, she went up to the defendant and said: "What were you thinking of to drive into us like that?"; and that he looked at her and said: "I didn't see you." She further testified that at the police station a policeman asked him: "Why didn't you stop your car?"; and that he just shrugged his shoulders. The transcript of the testimony shows that in the course of her testimony she left the stand and illustrated to the jury where the curve started and how the defendant came around it. She testified that it was a very bad curve.

The defendant, on the witness stand, told a very different story from that of the plaintiff and his wife, the principal differences being that he testified that he saw the plaintiff's car approaching on its left side of the street; that he stopped his own car; and that the plaintiff's car then ran violently into the defendant's car. His testimony was supported by the testimony of the two young women who were with him. The jury and the trial justice were in a much better position than we are in to determine what of the conflicting testimony should be believed and what should not be believed.

After a charge, to which no exception was taken, had been given by the trial justice to the jury, and the jury had considered the evidence, they returned a verdict for the plaintiff for the undisputed damages to the plaintiff's car. The trial justice, in his decision denying the defendant's motion for a new trial, stated that the case resolved itself into a pure question of fact for the jury and that he would not be justified in overturning their verdict.

In substance and effect, the charge of the jury was that the plaintiff was entitled to recover if and only if he had proved by a fair preponderance of the evidence that he had not been negligent and that the defendant had been negligent and that the negligence of the defendant had caused the accident.

From the verdict returned by the jury, after they had been thus charged by the trial justice, we must conclude that they had found that the fair preponderance of the evidence was in favor of the plaintiff on each of the three issues of fact submitted to them in that charge. After considering all the evidence, we are of the opinion that we cannot properly find that the trial justice was clearly wrong in denying the defendant's motion for a new trial. Nor do we find any reason to believe that the trial justice, in denying the defendant's motion for a new trial, overlooked or misunderstood any of the evidence in the case. We therefore are of the opinion that the defendant's exception to the denial of that motion, being his eighth exception, should be overruled.

The defendant's attorney, in his brief, argued in support of all his first seven exceptions, being to rulings by the trial justice in permitting the plaintiff's attorney to ask certain questions of the defendant on cross-examination and to ask certain questions of the plaintiff and his wife in the course of their testimony in rebuttal, and in denying a motion by the defendant's attorney that a certain remark by the plaintiff's attorney be stricken from the record and that the jury be instructed not to consider it.

We have considered all these exceptions and are of the opinion that none of these rulings was prejudicial to the defendant. We therefore find that none of these exceptions should be sustained.

All of the defendant's exceptions are overruled, and the case is remitted to the superior court for entry of judgment on the verdict.

*Bernard B. Abedon,* for plaintiff.
*Luigi Capasso,* for defendant.