## Travelers Indemnity Co. v. Moore.

January 24, 1947.

As Modified and Extended on Denial of

Rehearing March 28, 1947.

W. H. Spragens, Judge.

Polin & Polin and Doolan, Helm, Stites & Wood for appellant.

C. E. Rankin and R. L. Wathen for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

Prior to August 16, 1944, Mrs. Elizabeth Frances Grundy owned a Buick automobile and on that day she procured an indemnity policy from the appellant, and plaintiff below, The Travelers Indemnity Company, whereby it agreed to indemnify her against loss or damage which she might sustain by injury to her automobile but the indemnifying policy did not cover personal injuries that she might sustain from the same cause producing injury and damage to her automobile.

On the day above mentioned and while the indemnifying policy was in full force and effect a Chevrolet truck owned by defendant, and appellee, Randall Moore —while being driven by an employee of the owner— collided on a public highway with Mrs. Grundy's automobile in which she was traveling, and which was driven by her husband, Hugh L. Grundy. The collision damaged Mrs. Grundy's automobile to the amount of $848, and she sustained quite severe personal injuries.

On September 13, 1944, appellant, the insurer, paid to Mrs. Grundy, in compliance with the obligation of its policy issued to her, $848 damage to her automobile and at the same time took from her a subrogation receipt in compliance with the terms of the indemnifying

policy, whereby she transferred her claim for damages to her automobile to the appellant as her insurer.

On January 17, 1945, Mrs. Grundy sued appellee, Moore, to recover from him damages for personal injuries she sustained but in which action she neither sought to recover, nor did recover any damages to her automobile. She recovered a judgment against defendant in that action, but the amount of it, or whether or not it has been paid, does not appear in this record. On July 26, 1945, this action was filed by appellant, and plaintiff, in the Washington circuit court against Moore to recover from him the amount of $848 which it paid Mrs. Grundy for damages to her automobile, which it alleged in its petition it had the right to do as subrogee under the terms of its policy, fortified by the subrogation receipt issued by Mrs. Grundy. Appellee as defendant filed both a special and a general demurrer to appellant's petition, both of which the court sustained, and upon plaintiff failing to plead further its petition was dismissed, to reverse which it prosecutes this appeal.

The court in its order sustaining the demurrers to the petition gave no reason for sustaining either of them, but counsel for both parties in their briefs filed on this appeal agree that the ground for the court's order was and is that the facts above recited—all of which were alleged in the petition—did not confer the right of action on plaintiff, since it involved the splitting of the original cause of action in Mrs. Grundy to recover her entire damages to her automobile and that sustained by her personally, which the court concluded could not be done, so as to vest a separate and independent right of action in plaintiff as assignee of the damage sustained to her automobile. The supposed ground for sustaining the general demurrer as argued by appellee's counsel was that since the court held that the appellant could not maintain the action in its name and, since the owner of the damaged property could not split her cause of action either directly or indirectly, the judgment in her favor against appellee for the amount of her personal damages was a bar to another action by either the appellee or her insurer to recover for damages to her personal property, which should have been included in Mrs. Grundy's action against appellee. The correctness of such conclusion by the trial

court presents one of the questions for our determination.

The supposed ground for sustaining defendant's special demurrer, i. e., the contention that plaintiff obtained no right to maintain a separate action as subrogee to the claim for damage to the property covered by its risk, has been too often adversely held by this, and other courts, to require any extended discussion of that question. Three of our later cases so holding are: New York Underwriters Insurance Co. v. Louisville & N. R. R. Co., 285 Ky. 561, 148 S. W. 2d 710; Remedial System of Loaning v. New Hampshire Fire Insurance Co., 227 Ky. 652, 13 S. W. 2d 1005, and Aetna Life Insurance Co. v. Roper, 243 Ky. 811, 50 S. W. 2d 8. Those cases involved the right of the insurer to be subrogated to the right of the insured against a tort-feasor producing the loss, followed by its right to maintain an action against the tort-feasor. We need not stop to analyze the various reasons given for the creation of the right of subrogation in the insurer—followed by its right to maintain an action against the tort-feasor—since the question is firmly settled in this jurisdiction, as well as in practically all other jurisdictions throughout the country. The court therefore ruled erroneously in sustaining the special demurrer to the petition, if it did so on the supposed ground above stated, which is the one that counsel for appellee says was true.

The second ground involves the questions, whether or not, in the circumstances and facts of this case as hereinbefore set out, a single cause of action for damage sustained by an insured which was produced by a tort-feasor, when there is more than one item of damage sustained (only one of which was assigned to an insurer) may indirectly split his cause of action by transferring the right—through the right of subrogation—to an insurance company who has issued a policy on one of the items of damages, be sustained so as to create a separate and independent right of action by the subrogee upon satisfaction of the obligations of his or its policy against the tort-feasor for the amount it was compelled to pay under its insurance contract?

Involved in that ground is the question whether an action and the recovery of judgment by the insured

against a tort-feasor for only a part of his damage for which he held no indemnity contract is or not *res judicata* and a consequent bar against the subrogee in any proceedings that he or it might employ in an effort to enforce his subrogated rights as insurer of only part of the damage sustained by plaintiff?

It does not appear to be disputed that one sustaining an injury with consequent damage consisting of more than one item of damage may not split his single cause of action by maintaining in his name separate suits against the same tort-feasor for each item of damage sustained. As stated in briefs of counsel the leading case in this jurisdiction so determining is Cole's Adm'x v. Illinois Cent. R. Co., 120 Ky. 686, 87 S. W. 1082. A number of other domestic ones involving the same question have followed the well-settled rule announced in that case, and for which reason we do not feel called upon to further discuss such well-settled rule against the right of a damaged plaintiff to split his single cause of action for one item of damages sustained by him by a tort-feasor, and to later maintain an independent action against the same defendant to recover the assigned item produced by the same tort. The reason for such declared rule is that it is the duty of a plaintiff to assert his entire cause of action resulting from a single tort, and upon failure to do so he, in effect, renounces his right to recover other items of damages in subsequent actions.

However, that rule does not rest on the exact facts of this case. Nevertheless, a majority of courts have determined that, since the victim of the single tort may not split his cause of action against the tort-feasor to recover for consequent damages produced, he (the victim) likewise may not indirectly do so by agreeing to and actually transferring his right to recover damages sustained to one of several items pursuant to an insurance contract indemnifying him against damages so produced to that particular item. We say that the majority of courts so hold as will be seen by the text in 1 A. J. 494, sec. 114 and annotations in 64 A. L. R. 668, as well as in 140 A. L. R. 1241. The referred to text of A. J., after stating the general rule to be as indicated, says this, in the same section: "A qualification of this rule and an exception to the one forbidding the splitting of

causes of action by assignments of portions thereof exist, however, in some jurisdictions, it being held that the rule does not apply where the injured party has assigned his cause of action for damages to property before suit, or where another has been subrogated to such right of action, at least so as to bar a suit by the assignee. The benefit of the exception has even been extended to allow a suit by the injured person * * *.'' That volume contains a 1946 supplement, and on its pages 30 and 31 the section is rewritten so as to bring it up to date.

The annotator in 64 A. L. R. also says that: ''An exception to the rule that a single tort causing injury to a person and to his property constitutes but one cause of action, which cannot be split, is presented in several cases involving subrogation under insurance policies.''

Some of the courts, as is shown in the annotation referred to, uphold the right of the subrogee to maintain an action against the tort-feasor in such circumstances, upon the ground that his cause of action is different from that of the subrogor to recover personal damages sustained by him. But in the view we have taken it becomes unnecessary to discuss the soundness of that rule, more than to say that such conclusion is doubtful and contrary to the Cole and other domestic cases. The Mississippi Supreme Court in the case of Underwriters at Lloyd's Insurance Co. v. Vicksburg Traction Co., 106 Miss. 244, 63 So. 455, 457, 51 L. R. A., N. S., 319, determined the question now under consideration, as based upon completely parallel facts to those appearing in this case. It held that the insurer under his subrogated rights could maintain an action against the tort-feasor for the amount it paid under its policy obligation with the insured, notwithstanding such right might be considered as an indirect splitting of the insured's single cause of action against his wrongdoer. That holding was the grafting of an exception under like facts and conditions to the general rule forbidding splitting of causes of action, which that court held was necessary for the promotion of justice, and the affording of a speedy remedy to the subrogee. The insured in that case was one O'Neil. The appellant therein was his insurer against damage to O'Neil's automobile. While its policy was in force a collision occurred to

O'Neil's automobile, damaging it (the insured property) and in which he also sustained personal injuries. He brought suit against the wrongdoer whose negligence, as he contended, caused the collision and recovered a judgment, just as Mrs. Grundy did in this case against appellee, Moore, for his personal injuries. Prior thereto the insurer paid to O'Neil the amount of damages to his automobile. In a later action of the insurer against the wrongdoer it was insisted that the judgment in favor of O'Neil, the insured, constituted a bar to the insurer's action therein, but the court in answering that contention said: "It would not 'conserve the ends of justice,' but would work an injustice, to hold that Mr. O'Neil would, as claimed, destroy the right of appellant, vested in the manner above shown, to sue for damages to the automobile by bringing suit for injuries to his person. Appellant could not control Mr. O'Neil's course in entering suit. Appellant had no interest in his cause of action for personal injuries, but owned absolutely the right to recover for damages to the automobile."

The court then disclaimed any intention on its part to disturb, or digress from, the general rule against the splitting of a single cause of action, and then said: "It is not applicable here. We distinguish that case from this. Appellant's right to recover in this case should not be defeated by Mr. O'Neil's suit. The ends of justice, the public welfare, will be conserved by holding that appellant, under the facts of this case, has a cause of action against appellee."

The same holding in effect was made by the court in the case of LeBlond Schacht Truck Co. v. Farm Bureau Mutual Auto Insurance Co., 1929, 34 Ohio App. 478, 171 N. E. 414. The same conclusion under identical facts was reached by the court in the case of Underwood v. Dooley, 197 N. C. 100, 147 S. E. 686, 64 A. L. R. 656, which is the opinion to which the annotation hereinbefore referred to follows. There are other cases listed in the cited authorities having a more or less bearing on the question in issue, including a number of English cases approving the exception herein referred to as proper and sustainable under similar facts.

The question of adopting the exception to the rule against splitting causes of action in favor of a subrogee

so as to give him an independent right of action against the wrongdoer for the amount he was compelled to pay under his insurance contract, is one of first impression in this court. But the reasoning of the minority of the courts so declaring impresses us as the more logical one, and that the general rule against splitting single causes of action is not one that is immune from exceptions when under facts and conditions, as appear in this case, the adoption is necessary to complete protection and enforcement of the rights of all parties. In fact, we can scarcely recall a general rule which is entirely without an exception. Some court, at some time, and under some circumstances, had to (in the absence of a statutorily created exception) declare and apply the exceptions if necessary for the above purpose. Therefore without the cases supra sustaining the minority rule in this case, we would still have the right to adopt an exception to any general rule, when we concluded that it was necessary because of changed conditions and under altered circumstances that one should be applied. We therefore agree with the Mississippi and North Carolina courts and with the Alabama court in the case of Fidelity & Guaranty Fire Corporation v. Silver Fleet Motor Express, I. & C., 242 Ala. 559, 7 So. 2d 290, in which it approved the rulings of the Mississippi, North Carolina and other courts.

Our conclusion appears to be fortified by one reached by this court in the cases of Monson v. Payne, 199 Ky. 105, 250 S. W. 799, and State Farm Mutual Auto Insurance Co. v. Hall, 292 Ky. 22, 165 S. W. 2d 838, in which we held the subrogee of such a claim was the real party in interest and the one in whose name the action should be prosecuted under the provisions of section 18 of our Civil Code of Practice, and that the assignor could not maintain the action.

We do not intend to declare the exception herein approved, under the special facts of this case, to be absolute, mandatory and without qualification under all circumstances and conditions, since it might be that the subrogee would be estopped to enforce his claim against the tort-feasor when its subrogor (the insured) had recovered in a single action all of the items of damages sustained by him, and the defendant (tort-feasor) had satisfied that judgment by paying the amount of it to

the subrogor without notice of the subrogee's rights. Under such conditions it might be the duty of the subrogee, in order to preserve his rights against the tortfeasor, to see to it that the latter had notice of his subrogated rights before payment of the judgment. However, we do not so declare in this opinion, since the question was not, and could not be raised in this case, since the victim of the tort (insured) never sought to recover any judgment against appellee for damage to her automobile in the action she brought against him, which fact itself tended to indicate to appellee, as defendant in that case, that the right to recover damages to the personal property of the insured had been satisfied in some other manner, producing rights accruing to the one who did so. This illustration, however, is not intended to be a judicial declaration, but only as a possible condition precedent to the subrogee's right of recovery in its independent action.

Although an estoppel arising under the doctrine of res judicata is a defensive plea for the one urging it, yet plaintiff in its petition in this case set out all of the facts hereinbefore stated, including the action that Mrs. Grundy filed against appellee to recover only damages for her personal injuries, and the result of that action, which plaintiff alleged constituted an adjudication of negligence on the part of appellee and the absence of contributory negligence of Mrs. Grundy, the insured, in producing the collision between their respective motor vehicles.

The jury in rendering judgment in favor of plaintiff in that action so determined. The demurrer to the petition in this case, which the court sustained, admitted those allegations, which we conclude properly presented the question of judicial estoppel pleaded by plaintiff on the question of negligence by either party. In so ruling we conclude that the court committed error, and which conclusion is properly deducible from the opinion in the Oregon Supreme Court in the case of Winters v. Bisaillon, 153 Or. 509, 57 P. 2d 1095, 104 A. L. R. 968. See also the annotation to that opinion in the latter publication beginning on page 973. We also in principle sustained the estoppel in the case of Blue Valley Creamery Co. v. Cronimus, 270 Ky. 496, 110 S. W. 2d 286. Such conclusion, even in the absence of such adjudications or

texts, necessarily follows from the facts creating the particular estoppel. The cases cited supra against the right of the *injured* person to maintain a second independent action on a particular item of damage sustained, when there were more than one, after obtaining a judgment in a prior action against the same defendant for only one of the items of damage, are bottomed on the fact that the plaintiff is estopped to maintain the second action based upon any fact adjudicated in the first one or which could or should have been litigated in that action. The reverse of the rule is also true, i. e., that defendant is likewise estopped to relitigate facts that were adjudicated in the first action in defense of the second one founded on the same facts. Such estoppels, as is well settled, apply to privies of the one in whose favor they originally existed. Plaintiff in this case is a privy of Mrs. Grundy, and under the rule governing such estoppels it became entitled to rely on the conclusiveness of the judgment in her case against appellee as to appellee's negligence, and the absence of her contributory negligence, in producing the collision between their respective vehicles. However, the estoppel is *not* available in this case on the issue of the extent of damages produced to the insured's automobile, since that issue was neither presented, litigated nor adjudged in the insured's action against appellee to recover solely for her personal injuries and which plaintiff admits in its petition in this case. Therefore, the only issue on the merits for determination in this case is the extent of such damages to the insured's automobile as may be proven on the trial of the case, without reference to the amount plaintiff paid the insured in settlement thereof.

Lastly, it is argued that the special demurrer was properly sustained by the trial court because plaintiff did not make its subrogor, the insured, a party to the action, which argument is attempted to be sustained under the provisions of section 19 of our Civil Code of Practice. In the first place it should be noted that the right of subrogation is the creature of courts of equity and plaintiff as the insurer in this case would doubtless have the right of subrogation under that equitable doctrine in the absence of any contract right contained in its policy for such right. But whether so or not it is pointed out in the text of 6 C. J. S., Assignments, sec.

2, p. 1051, that "subrogation, however, differs materially from an assignment. Subrogation is the act of the law, depending not upon contract, but upon the principles of equity, while assignment is the act of the parties, and depends generally on intention." If, however, plaintiff's right in this case depended altogether on an actual assignment as contemplated by the Civil Code of Practice section, then it is our conclusion that under the facts of this case the section's requirement that the assignor be made a party to the assignee's action does not necessarily apply. It is a fundamental principle in the law that "when the reason ceases the rule ceases."

The code requirement was intended as a protector to the rights of the assignor and those of the obligor in the assigned chose. Here each of them was fully protected by the judgment in the suit of Mrs. Grundy, the supposed assignor, and appellee Moore, the tort-feasor and obligor. She became estopped, under the doctrine of the Cole Case, to later sue for the item of damages done to her automobile by appellee. Therefore, no rights of hers could be affected by her not being a party to appellant's action. That suit also informed Moore that she could not later sue him to recover damages done to her automobile through his alleged negligence, and, therefore, he could not be prejudiced by her not being made a party to the action. All of which we conclude completely answers this contention of appellee's counsel.

Wherefore, for the reasons stated, the judgment is reversed with directions to set it aside and to overrule both the special and the general demurrers to the petition, and for other proceedings consistent with this opinion.