543 So.2d 154 (1989)
WELLS FARGO ARMORED SERVICE CORPORATION, Herman C. Ludvigsen and James T. Pickens
v.
Elbiert TURNER.
No. 58157.
Supreme Court of Mississippi.
February 27, 1989.
Rehearing Granted in Part and Opinion Modified May 10, 1989.
Jackson H. Ables, III, S. Mark Wann, Silas W. McCharen, Daniel, Coker, Horton & Bell, Frank A. Wood, Jr., John L. Low, IV, Watkins & Eager, Jackson, for appellants.
Marshall Sanders, Vicksburg, for appellee.
Before DAN M. LEE, ROBERTSON and ZUCCARO, JJ.
DAN M. LEE, Presiding Justice, for the Court:
This appeal arises out of an automobile accident which occurred on December 27, 1985, on U.S. Highway 61 south of Port Gibson, near the community of Russum in Claiborne County, Mississippi. Suit was filed by Elbert Turner in the Circuit Court of Claiborne County. Named as defendants were Wells Fargo Armored Service Corporation ("Wells Fargo"), Herman C. Ludvigsen, Pickens Brothers Lumber Co. ("Pickens Brothers"), and James T. Pickens. Pickens Brothers Lumber Co. filed a *155 cross-claim against Wells Fargo and Ludvigsen for damage to its pickup truck.
The plaintiff/appellee, Elbert Turner, was injured when a Wells Fargo armored truck driven by defendant/appellant Herman C. Ludvigsen collided with his automobile. The armored truck simultaneously hit the rear of a pickup truck owned by cross-appellee Pickens Brothers Lumber Co., Inc., and driven by defendant/appellant James T. Pickens.
Finding that James Pickens was not acting as an agent of Pickens Brothers at the time of the accident, the court directed a verdict against Turner as to the liability of Pickens Brothers. Turner did not appeal this directed verdict.
The court directed a verdict for Pickens Brothers against Wells Fargo on its cross-claim for the property damage to the 1983 Ford pickup truck driven by James T. Pickens and struck by the armored truck owned by Wells Fargo and driven by Ludvigsen. The jury returned a verdict in the amount of three million four hundred sixty-one thousand eighty-two dollars ($3,461,082.00) against appellant/defendants James T. Pickens, Herman Ludvigsen, and Wells Fargo. This verdict was reduced on post-trial motion to conform to plaintiff's demand under the ad damnum clause to three million four hundred sixteen thousand ninety dollars ($3,416,090.00). Defendants' motions for judgment n.o.v., new trial, and remittitur were denied.
Appellants Wells Fargo and Ludvigsen appeal the court's failure to sustain the motion for judgment n.o.v., a new trial, or remittitur. They also appeal the directed verdict in favor of Pickens Brothers, assigning numerous errors.
James T. Pickens, also assigning numerous errors, appeals the refusal of the trial judge to grant a new trial, judgment n.o.v., or remittitur.
Finding that the verdict against James T. Pickens was contrary to the overwhelming weight of the evidence, we reverse and remand for a new trial as to both liability and damages.
We affirm the jury's finding that Ludvigsen and Wells Fargo were negligent. However, finding merit in the contention that the verdict is so excessive as to evidence bias, passion and prejudice, we reduce the jury award to eight hundred fifty thousand dollars ($850,000), conditioned upon acceptance within thirty (30) days or in the alternative a new trial on damages only.
We affirm the directed verdict in favor of Pickens Brothers Lumber Co., Inc., against Ludvigsen and Wells Fargo.

FACTS
At approximately 9:30 a.m. on December 27, 1985, plaintiff Elbert Turner was driving north on State Highway 61, south of Port Gibson, Mississippi, in his 1975 Lincoln Continental. A light rain was falling. At the same time, defendant James T. Pickens was driving south on Highway 61 in a 1983 Ford pickup truck owned by Pickens Brothers Lumber Co., Inc. Pickens had left his job to drive home for breakfast, and was not on any business for Pickens Brothers at the time of the unfortunate accident.
Following Pickens, also travelling south, was a Wells Fargo armored truck driven by Herman Ludvigsen. This 40,000-pound armored vehicle was owned and operated by Wells Fargo Armored Service Corp. Ludvigsen was acting in his capacity as an employee of Wells Fargo at the time of the accident. The armored truck had travelled from Jackson, Mississippi, to Vicksburg that morning and was en route from Vicksburg to Natchez at the time of the accident.
Highway 61 is a well-travelled two-lane paved federal highway which runs generally north and south. The accident occurred at a culvert-type bridge, bordered by steel guard rails. Immediately on the south side of the bridge, the road curves sharply, blocking any view of oncoming traffic. According to the testimony of Pickens, he was approaching this culvert-type bridge, slowing down because a deer ran into his pickup truck. Turner, however, testified that Pickens had stopped while still partially on *156 the roadway. As Pickens' truck approached the bridge, the Wells Fargo armored truck, which was travelling approximately six car lengths behind Pickens at a speed of approximately fifty miles per hour, accelerated to pass Pickens and moved into the north-bound lane. Ludvigsen saw Turner's automobile approaching and attempted to get back into his own southbound lane to avoid a head-on collision with Turner. The Wells Fargo truck went into a skid, sliding sideways down the middle of Highway 61 until striking Turner. Turner, on seeing the armored truck in his lane of travel, braked to a stop, but could not pull off the roadway due to the presence of a guard rail. Turner's car was hit on the front left side by the rear tandem wheels of the Wells Fargo truck. Pickens' truck was hit in the rear by the Wells Fargo truck, but did not come into contact with Turner's vehicle at any point. Pickens was not injured. Turner was injured and hospitalized. Ludvigsen was slightly injured.
Pickens claims that he was reducing his speed because he hit a deer which ran out of the woods and into his pickup truck. Ludvigsen claims to have swerved into the north-bound lane to avoid a "body" which appeared from under Pickens' truck. Neither Turner nor the eyewitnesses saw a deer. The investigating highway patrolman saw no signs of a deer. No blood was discovered on the highway. Pickens' truck showed signs, two days after the accident, of having hit an animal in the recent past. Pickens and Ludvigsen claimed that someone had driven by and picked up the deer.

Proposition I

Did the Trial Judge Err in Refusing Wells Fargo's Motion for 
Judgment N.O.V. Or, in the Alternative, a New Trial?
Several of Wells Fargo's assignments of error challenge the sufficiency of the evidence presented by Turner. Wells Fargo asserts that the evidence established that Ludvigsen was not negligent and the accident was unavoidable.
The evidence established that Ludvigsen was travelling at 50 miles per hour in a 55 miles per hour zone, approximately six car lengths behind Pickens prior to the accident. He claims to have swerved into the left lane to avoid the decelerating Pickens truck and a "body." The road was wet due to intermittent rain. When Pickens slowed, Ludvigsen did not brake; but instead accelerated and attempted to pass.
Ludvigsen's contention is that when faced with the unforeseeable appearance of a "body" in the road, he acted reasonably in avoiding the hazard and no evidence was presented from which to infer that he was not in reasonable control of his armored truck.
The evidence of this "body" was disputed. Two eyewitnesses to the accident, Cordelia Gary and Vernesta Wade, testified that they saw no deer at the scene of the accident. Lee Howard, the investigating highway patrolman, saw no signs of a deer at the accident scene. James Pickens stated that a deer ran into and underneath the right side of his truck. Pickens' corroborating witnesses, R.C. Kilcrease and Cecil Wade, testified that the truck showed evidence of hitting an animal on the left side of the front grill and underneath the chassis and A-frame; however, according to their testimony, the animal debris was located on the left front of the pickup truck, not the right.
It is apparent that the jury did not believe that a deer or any other "body" was a factor in this accident. As we have stated many times:
The demeanor or bearing, the tone of voice, the attitude and appearance of the witnesses, all are primarily for inspection and review by the jury. The jury not only has the right and duty to determine the truth or falsity of the witnesses, but also has the right to evaluate and determine what portions of the testimony of any witness it will accept or reject; therefore, unless it is clear to this Court that the verdict is contrary to the overwhelming weight of the credible testimony, this Court will not set aside the verdict of a jury.
Travelers Indemnity Co. v. Rawson, 222 So.2d 131, 134 (Miss. 1969).
*157 Ludvigsen's duty to Turner and Pickens is defined by § 63-3-609 and § 63-3-611, MCA. Section 63-3-601 requires that vehicles be driven on the right half of the roadway except in limited circumstances as provided in § 63-3-611:
§ 63-3-611. Limitations on overtaking on the left.
(1) No vehicle shall be driven on the left side of the center of the roadway in overtaking and passing another vehicle proceeding in the same direction unless such left side is clearly visible and is free of oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be completely made without interfering with the safe operation of any vehicle overtaken. In every event the overtaking vehicle must return to the right-hand side of the roadway before coming within one hundred feet of any vehicle approaching from the opposite direction.
(2) No vehicle shall, in overtaking and passing another vehicle or at any other time, be driven to the left side of the roadway under the following conditions:
a. When approaching the crest of a grade or upon a curve in the highway where the driver's view along the highway is obstructed;
b. When approaching within one hundred feet of any bridge, viaduct, or tunnel;
.....
Ludvigsen owes additional duties of maintaining proper lookout and keeping his vehicle under control in light of existing circumstances.
As this Court stated in Turner v. Turner, 524 So.2d 942 (Miss. 1988), whether the defendant was driving below the posted speed limit is not dispositive. The jury must decide whether the speed was excessive under the given circumstances. Failure to keep a proper lookout is also a question for the jury.
The evidence presented is overwhelming and the jury found that Ludvigsen breached these duties. The standard of review of a jury decision as stated in Bell v. City of Bay St. Louis, 467 So.2d 657, 660 (Miss. 1985) is:
Once the jury has returned a verdict in a civil case, we are not at liberty to direct that judgment be entered contrary to that verdict short of a conclusion on our part that, given the evidence as a whole, taken in the light most favorable to the verdict, no reasonable, hypothetical juror could have found as the jury found. Stubblefield v. Jesco, Inc., 464 So.2d 47, 54 (Miss. 1984); Weems v. American Security Insurance Co., 450 So.2d 431, 435 (Miss. 1984).
Applying this standard, the jury had before it sufficient evidence from which to find defendants Ludvigsen and Wells Fargo negligent. Therefore, the trial judge correctly denied the motion for judgment n.o.v.

Proposition II

Did the Trial Judge Err in Directing a Verdict in Favor of 
Pickens Brothers Lumber Co., Inc., Against Wells Fargo?
Ludvigsen and Wells Fargo contend that the trial court erred in directing a verdict in favor of Pickens Brothers Lumber Co. against them on Pickens Brothers' cross-claim for $2,398.94 property damage to the pick-up truck which was rear-ended by the Wells Fargo armored truck.
The decision to grant a directed verdict is one of law and is to be made by the court. When a motion for directed verdict is made, the court must consider all evidence offered at trial in the light most favorable to the non-moving party. Hammond v. Grissom, 470 So.2d 1049 (Miss. 1985); McGaugh v. Gray, 495 So.2d 1024 (Miss. 1986). In considering the evidence and all reasonable inferences therefrom, the court must determine whether the evidence is so overwhelmingly against the non-moving party that reasonable men could not have found in favor of the non-moving party. Rester v. Morrow, 491 So.2d 204 (Miss. 1986).
The facts presented by Wells Fargo at trial were that Ludvigsen saw Pickens slowing down. He accelerated and attempted to pass in the left lane. Upon encountering Turner's vehicle Ludvigsen *158 testified that he deliberately hit Pickens Brothers' truck to avoid a head-on collision with Turner. Obviously, based on testimony of Ludvigsen alone, Pickens Brothers was entitled to the directed verdict.
Although Ludvigsen and Wells Fargo contend that James T. Pickens was liable to Pickens Brothers, the fact is that Pickens Brothers Lumber Co., Inc., did not bring suit against James T. Pickens. Nor did Ludvigsen and Wells Fargo cross-claim against James T. Pickens. Therefore, the trial court did not err in directing the verdict for Pickens Brothers.

Proposition III

Did the Trial Court Err in Denying James Pickens' Motion for 
Judgment N.O.V. Or, in the Alternative, a New Trial?
James T. Pickens vigorously disputes Turner's contention that his pickup truck was stopped, partially obstructing the roadway. Four witnesses testified that his pickup truck had not stopped, but instead was moving slowly down the highway; only Turner stated that it had stopped.
In order for the jury to have found Mr. Pickens negligent, it must necessarily have accepted Turner's testimony that Mr. Pickens had actually stopped his pickup truck on the roadway, obstructing traffic and was standing beside the driver's door, which would have placed him in the south-bound lane of Highway 61 at the time of the accident.
We observe that the Wells Fargo truck hit both Turner's Lincoln Continental and Pickens' Ford pickup truck on a two-lane culvert-type bridge with steel guard rails. Mr. Pickens was not injured. The uncontested proof showed that the Pickens truck was hit in the rear. The Wells Fargo armored truck skidded sideways and travelled down the center of the highway where Mr. Pickens would have been standing, according to Turner's version of the accident. If we accept Turner's version of the accident, placing Pickens in the middle of the south-bound lane, nothing short of a miracle would have prevented Pickens' being killed or seriously injured.
In addition to the fact that Pickens was uninjured, both Pickens and Ludvigsen testified that Pickens' truck was moving. Furthermore, two witnesses called by Turner admitted that Pickens was in his own lane and still moving at the time of the accident.
On a motion for a new trial, the trial judge should set aside a jury's verdict when, in the exercise of his sound discretion, he is convinced that the verdict is contrary to the substantial weight of the evidence. Adams v. Green, 474 So.2d 577 (Miss. 1985); Mobile and Ohio Railroad Co. v. Bennett, 127 Miss. 413, 415, 90 So. 113 (1921); Columbus and Greenville Railway Co. v. Buford, 150 Miss. 832, 840, 116 So. 817 (1928); Odier v. Sumrall, 353 So.2d 1370, 1374 (Miss. 1978).
As stated in Elsworth v. Glindmeyer, 234 So.2d 312, 319 (Miss. 1970):
It is enough if the event found was so improbable, according to ordinary operation of physical forces, or was so overwhelmingly disproved by credible witnesses, as to compel the conviction that the jury either failed to weigh the credible evidence carefully, or drew unwarranted inferences, or yielded to a partisan bias.
See also Spradlin v. Smith, 494 So.2d 354 (Miss. 1986); Rucker v. Hopkins, 499 So.2d 766 (Miss. 1986).
Applying this standard to the case at bar, we hold that the jury verdict against James T. Pickens is against the overwhelming weight of the evidence. We conclude that the trial judge erred in denying Pickens' motion for a new trial.

Proposition IV

Was the Jury Award So Excessive as to Indicate that the Jurors 
were Unduly Influenced by Emotional Factors?
Ludvigsen, Wells Fargo, and Pickens contend that an award of $3,461,082 was so excessive as to indicate that the jurors were unduly influenced by emotional factors, citing § 11-1-55, M.C.A. (1972) and Holmes County Bank & Trust v. Staple *159 Cotton Co-Op, 495 So.2d 447, 451 (Miss. 1986).
Whether a jury verdict is excessive must be decided in light of the particular facts of each case. Biloxi Electric Co. v. Thorn, 264 So.2d 404, 405 (Miss. 1972).
When considering whether a jury verdict is so excessive as to manifest that the jury was biased and prejudiced, we have stated the standard of review as:
The damages, therefore, must be so excessive as to strike mankind, at first blush, as being beyond all measure, unreasonable, and outrageous, and such as manifestly show the Jury to have been actuated by passion, partiality, prejudice, or corruption. In short, the damages must be flagrantly outrageous and extravagant, where they have no standard by which to ascertain the excess. Detroit Marine Engineering v. Robert McRee, 510 So.2d 462 (Miss. 1987).
Biloxi Electric Co. v. Thorn, 264 So.2d 404, 405 (Miss. 1972).
A close examination of the evidence indicates that approximately $3,000,000.00 was awarded to compensate Turner for permanent damage and scars to his body; and for past, present and future pain and suffering.
The jury awarded $3,461,082.00 without designating the amount allotted to each element of damage. Evidence was presented that the cost of repair of Turner's vehicle was estimated at $1,789.92, even though it was purchased six months earlier for $500. Mrs. Turner testified that car rental expenses totalled $12,000.00 and she estimated medical costs at approximately $10,000.00. However, Turner's complaint did not include a claim for medical expenses. Turner presented uncontroverted expert testimony that his lifetime income stream totalled $609,093.00 with a net present value of $402,090.00. He also presented expert testimony that he was totally disabled as a result of his injury, in light of his education and experience and the job market in Claiborne County. This evidence was also uncontroverted.
Turner's injuries consisted of a broken elbow, facial lacerations, bruising of his chest, a dislocated hip and a fractured pelvis. He was hospitalized for 13 days as a result of these injuries. The arm, facial and chest injuries healed completely. Turner sustained a 41% permanent partial impairment of his left leg as a result of the hip and pelvis injuries, resulting in a 16% impairment to his body as a whole. Although the fractured pelvis had healed, calcium deposits and arthritis had developed restricting Turner's range of motion and causing chronic pain. Turner's physician prescribed Motrin in September 1986. This anti-inflammatory medication was prescribed to relieve the inflammation of the joint which caused Turner's pain and Turner had taken only aspirin since that time.
This Court has stated that jury awards are not merely advisory and will not ordinarily be set aside. Schoppe v. Applied Chemicals Div., etc., 418 So.2d 833, 836 (Miss. 1982); that the jury's verdict is a finding of fact and that this Court's ventures into the jury's province are greatly restricted unless it finds the verdict outrageous and extravagant. Detroit Marine, supra; Anderson v. Jaeger, 317 So.2d 902, 907 (Miss. 1975).
James v. Jackson, 514 So.2d 1224 (Miss. 1987), listed elements of damages which must be examined to determine bias, prejudice, or passion on the part of the jury. These are (1) past and future pain and suffering, (2) past and future medical expenses, (3) lost wages, and (4) future disability. In Biloxi Electric Co., Inc. v. Thorn, 264 So.2d 404, 406 (Miss. 1972) we said that:
The only evidence of corruption, passion, prejudice or bias on the part of the jury is an inference, if any, to be drawn from contrasting the amount of the verdict with the amount of damages.
This award of $3,416,090.00 is so excessive in view of Turner's injuries as to strike us at first blush as beyond all measure unreasonable and outrageous which manifestly indicates that the jury was actuated by passion, partiality, prejudice or corruption.
*160 Therefore, we find that we have no alternative under the facts and circumstances of this case but to order a remittitur from $3,416,090 to $850,000. This sum is in itself quite high, but in light of the fact that $402,000 was established as loss of income of this 28-year-old man and that he has and will continue to have great pain and suffering, we believe this sum to be reasonable.

CONCLUSION
We reverse and remand for a new trial as to liability and damages awarded Turner against James T. Pickens.
We affirm as to the liability of Herman Ludvigsen and Wells Fargo Armored Service Corporation; we vacate and remit the judgment from $3,416,090 to $850,000, provided that said remitted judgment is paid accepted and paid within thirty (30) days; otherwise, a new trial is granted as to damages only. If Turner accepts the remittitur, the principal sum of $850,000 will be payable together with interest at the legal rate on that sum from the date of the original judgment in his favor. Howard Bros. of Phenix City, Inc. v. Penley, 492 So.2d 965, 970 (Miss. 1986); Stubblefield v. Jesco, Inc., 464 So.2d 47, 62-63 (Miss. 1985).
We affirm the directed verdict of $2,398.94 for Pickens Brothers Lumber Co., Inc., against Herman Ludvigsen and Wells Fargo Armored Service Corporation.
REVERSED AND REMANDED AS TO JAMES T. PICKENS.
AFFIRMED AS TO LIABILITY OF LUDVIGSEN AND WELLS FARGO; JUDGMENT VACATED AND REMITTED FROM $3,416,090 TO $850,000, CONDITIONED UPON ACCEPTANCE AND PAYMENT WITHIN THIRTY (30) DAYS; OTHERWISE, A NEW TRIAL IS GRANTED AS TO DAMAGES ONLY.
AFFIRMED AS TO PICKENS BROTHERS LUMBER CO., INC.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, ROBERTSON, PITTMAN and ZUCCARO, JJ., concur.
ANDERSON and SULLIVAN, JJ., dissent to remittitur only by separate written opinion.
ANDERSON, Justice, dissenting:
With the greatest respect I dissent, for this Court has a short memory. Just recently this Court approved a one million dollar verdict wherein the injured party suffered $18,000 in hospital bills and $17,000 in lost wages. Detroit Marine Engineering v. McRee, 510 So.2d 462 (Miss. 1987). Moreover, the injured party in Detroit, supra, was healthy enough to return to his previous employment as a truck driver some thirteen months after the accident.
In short, considering that Turner is totally disabled and scarred, I do not think this verdict was excessive, outrageous or extravagant and I would affirm.
SULLIVAN, J., joins in this dissent.