# IN THE COURT OF APPEALS 4/22/97

# OF THE

# STATE OF MISSISSIPPI

## NO. 94-CA-01263 COA

NORMAN LEE SPENCER AND J.D. BOSTICK D/B/A J.D. BOSTICK LOGGING

APPELLANTS

 v.

 MARY ANN HANNON, EXECUTRIX OF THE ESTATE OF JOE W. ALDRIDGE

APPELLEE

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND

MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-B

TRIAL JUDGE: HON. FRANK ALLISON RUSSELL

COURT FROM WHICH APPEALED: TISHOMINGO COUNTY CIRCUIT COURT

FOR APPELLANTS:

CLAUDE F. CLAYTON JR.

TACEY CLARK HUMPHREY

FOR APPELLEE:

DUNCAN LOTT

NATURE OF THE CASE: AUTOMOBILE NEGLIGENCE

TRIAL COURT DISPOSITION: APPELLEE AWARDED $40,000 IN DAMAGES

CERTIORARI FILED: 6/30/97

MANDATE ISSUED: 9/11/97

BEFORE BRIDGES, C.J., KING, AND PAYNE, JJ.

KING, J., FOR THE COURT:

Spencer and Bostick appeal the verdict of a Tishomingo County jury, which determined that Spencer was negligent in the operation of an automobile and assessed Aldridge's damages at $40,000.00. We have considered the following assignments of error and find that no error was committed by the trial court:

I. Did the trial court err when it refused to grant instructions D-5 and D-10?

II. Did the trial court err when it granted instruction P-4?

III. Did the trial court err in denying Defendant's motion for new trial?

IV. Did the trial court err in denying Defendant's request for JNOV because the verdict was excessive?

V. Did the Health Care Financing Administration's right to subrogation preclude Aldridge from

introducing evidence of medical expenses incurred, but paid by Medicare?

VI. Did the trial court err by failing to order Aldridge to reimburse Medicare?

**FACTS**

On February 4, 1993, Aldridge was driving his truck in a northerly direction on Highway 25 between the cities of Midway and Iuka. The appellee, Spencer was traveling behind Aldridge in an eighteen wheeler, which was owned by his employer J.D. Bostick Logging. Susan Pendagraph and her mother, Joan Pearson were traveling in another vehicle behind the Bostick truck.

Aldridge was en route to a flea market located near the intersection of Highway 25 and County Road 181. As Aldridge proceeded to turn left from Highway 25 into the private entrance leading to the flea market, Spencer attempted to pass Aldridge's vehicle on the left, and a collision resulted.

At trial, Aldridge testified that he noticed Spencer's vehicle approximately 1200 feet behind him and signaled the turn approximately 300 feet from the intersection of Highway 25 and County Road 181. Pendagraph and Pearson testified that Aldridge failed to signal the turn. Spencer testified that he did not see Aldridge signal the turn, but noticed that Aldridge's vehicle had slowed when he attempted to pass. In contradiction to the testimonies of Spencer, Pendagraph, and Pearson, Mississippi State Trooper Jerry Boyd testified that he arrived after the collision had occurred and noticed that Aldridge's left turn signal indicator was still blinking.

ANALYSIS OF THE ISSUES AND DISCUSSION OF LAW

I.

DID THE TRIAL COURT ERR BY FAILING TO GRANT INSTRUCTIONS D-5 AND

D-10?

Appellants argue that Aldridge was negligent because Aldridge failed to keep a proper lookout before executing the turn and because Aldridge turned his vehicle from a direct course when the turn could not be executed with reasonable certainty; therefore, the trial court should have granted their request for the following instructions:

**D-5**

> You are hereby instructed that plaintiff Joe Aldridge is guilty of negligence by failing to comply with his duty to keep a proper lookout, specifically his failure to ascertain the location of defendant's vehicle prior to making a left hand turn, and if you find that plaintiff's failure to keep a proper lookout was the sole proximate cause of the accident, then you must return a verdict for defendants.

**D-10**

> The court instructs you that plaintiff Joe Aldridge was negligent as a matter of law for turning his truck from a direct course on the highway when the turn could not be made with reasonable safety. If you find that such negligence was the sole proximate cause of the accident in question, then you must find for the defendants.

Instructions D-5 and D-10 are peremptory--precluding the jury from considering the issue of Aldridge's negligence. Instructions D-5 and D-10 only allow the jury to consider whether Aldridge's negligence was the sole cause of the accident. When a court considers a request for a peremptory instruction, "all evidence with reasonable inferences flowing therefrom must be accepted as true in favor of the party against whom the peremptory instruction is requested, all evidence in conflict therewith is disregarded, and, if such evidence is sufficient to support a verdict for the party against whom the peremptory instruction is requested, then it should be denied." *Butler v. Lott Furniture Co.,* 482 So. 2d 1134, 135 (citations omitted). Applying this standard, we accept as true the following evidence favoring Aldridge and disregard the evidence in conflict therewith :

1. Aldridge's testimony that he looked in his rear view mirror on the dash when he came within 300 feet of the intersection of Highway 25 and County Road 181 and saw that Spencer was approxi-

mately 1,200 feet behind him;

2. Aldridge's testimony that he turned his left turn signal indicator on when he came within 300 feet of the intersection;

3. Aldridge's testimony that when he came within 10 feet of the intersection of Highway 25 and County Road 181, he looked in his left side-view mirror and saw the rear of a van, which was traveling in the opposite direction.

4. Aldridge's testimony that after the collision, Spencer came to assist Aldridge, and Aldridge asked Spencer, "Did you not see my signal light and brake lights?" and Spencer replied, "No, I didn't."

The preceding evidence sufficiently supports a verdict favoring Aldridge; therefore, the trial court correctly denied the instructions. This assignment of error lacks merit.

II.

## DID THE TRIAL COURT ERR BY GRANTING INSTRUCTION P-4?

Aldridge was granted the following instruction, which was objected to by the Appellants' counsel:

P-4

> The court instructs you that the term "intersection" within the meaning of Section 63-3-611 MCA 1972 that prohibits overtaking or passing another vehicle within 100 feet of an intersection requires the conjunction of two highways. The court instructs you that Mississippi Highway 25 and Tishomingo County Road 181 are highways within the meaning of Section 63-3-611 MCA 1972, and do form an intersection as defined in MCA Section 63-3-611.

Citing *Gore v. Patrick*, the Appellants argue that an intersection must be marked or readily distinguishable and because the evidence clearly showed that the intersection was not marked, the court erred when it granted Instruction P-4.

In *Gore,* the court opined that it would not be reasonable to require a motorist to respect the statute prohibiting overtaking and passing a vehicle within one hundred feet of an intersection, if the intersection is not marked or observable by the operator in the exercise of reasonable care. *Gore v. Patrick,* 246 Miss. 715, 722, 150 So. 2d 169, 171 (1963). During the jury instruction conference, the court overruled defense counsel's objection to the jury stating:

> The court takes judicial notice having traveled Highway 25 for ten and a half years while on the bench that Highway 25 is a State of Mississippi public highway. County Road-- Tishomingo County Road 181 is a paved county road with a highway marker existing there or road marker existing there where it intersects Highway 25. . .

Defense counsel advised the judge that there was no road marker at the intersection, and the judge said:

> "I'll reverse myself on that as far as there being a marker there. It is a black-topped paved road which appears to be old Highway 25 and has been there for many years. P-4 will be given over the objection of the Defendants.

No further discussion was held on the instruction.

Absent the judge's observation that Tishomingo County Road 181 was a paved road existing at the intersection for many years, Spencer testified that prior to the accident's occurrence, he had traveled Highway 25 often and was familiar with Tishomingo County Road 181. In *Gore,* the court was concerned with unfairly imposing liability upon an individual for overtaking or passing within an intersection when the individual was not forewarned of the intersection or could not observe the intersection in the exercise of reasonable care. Because Spencer had traveled Highway 25 and was

familiar with Tishomingo County Road 181, the concerns of the *Gore* court are non-existent in the present case. Notwithstanding Spencer's familiarity with Highway 25 and Tishomingo County Road 181, our review of the photographs depicting the intersection revealed that there are no trees or obstructions inhibiting a motorist's view of the intersection. Moreover, the intersection is readily observable by motorists exercising reasonable care. Therefore, we are unable to find that the instruction was improperly granted. This assignment of error lacks merit.

The dissent suggests that the giving of jury instruction P-4 was error, and that by doing so, the Court mandated a verdict for Appellee, notwithstanding questions regarding the Appellee's liability for the collision. The purpose of a jury instruction is to aid, rather than hinder the search for truth. Where an instruction is supported by the evidence and aids in the resolution of a fact question, that instruction should be given. *Puckett Machinery Co. v. Edwards,* 641 So. 2d 29, 35 (Miss. 1994) (explaining that the jury should be instructed on those aspects of the law which will enable it to decide the issues commended to it for determination). The trial court reviewed instruction P-4 and considered his personal experience of not less than ten years, and determined that the instruction was consistent with the evidence and would assist the jury in its ultimate decision. Contrary to the suggestion of the dissent, the granting of P-4 did not finally resolve the issue of liability. The jury still had before it the question of any negligence by the Appellee, and how it may have contributed to causing the collision. There is nothing in the record which suggests that the jury did not in fact consider the comparative negligence of both the Appellee and the Appellants.

III.

> DID THE TRIAL COURT ERR IN DENYING APPELLANT'S MOTION FOR A NEW TRIAL?

Appellants argue that the jury's verdict was against the overwhelming weight of the evidence; therefore, the court should have granted their motion for new trial. Appellants' cite the following as supporting their contention that the jury was influenced by bias:

> 1. Pearson and Pendagraph, two disinterested witnesses corroborated Spencer's account of how the accident occurred;
>
> 2. Aldridge's account of the accident at trial varied from his deposition testimony;
>
> 3. Aldridge testified that injuries from the accident prohibited him from hunting, but a newspaper clipping indicated that he had killed a deer;
>
> 4. Aldridge's testimony was unsupported by eyewitnesses.

We recapitulate the test applied to a jury's verdict as follows:

> Once the jury has returned a verdict in a civil case, we are not at liberty to direct that judgment be entered contrary to that verdict short of a conclusion on our part that given the evidence as a whole, taken in the light most favorable to the verdict, no reasonable, hypothetical juror could have found as the jury found.

*Henson v. Roberts,* 679 So. 2d 1041, 1045 (Miss. 1996). Despite Appellants itemization of

supporting facts, we are unable to conclude that no reasonable hypothetical juror could have found as the jury found. The evidence revealed that the accident occurred within one hundred feet of the intersection of Highway 25 and Tishomingo County Road 181, and Spencer admitted that just prior to the accident's occurrence, he was attempting to pass Aldridge. Spencer also acknowledged that he had traveled Highway 25 frequently and was familiar with the intersection of Highway 25 and Tishomingo County Road 181. From this evidence, a juror could reasonably conclude that Spencer violated section 63-3-611 of the Mississippi Code, which prohibits the overtaking or passing of a vehicle within one hundred feet of an intersection, and that Spencer's violation of the statute proximately caused the accident. Because the evidence is in dispute, we refuse to interfere with the jury's decision. This assignment of error lacks merit.

IV.

> DID THE TRIAL COURT ERR BY DENYING APPELLANT'S REQUEST FOR A JNOV?

Appellants argue that the jury's verdict was excessive because Aldridge merely suffered cuts and bruises in the accident. The standard for reviewing whether a jury's verdict is excessive has been stated as:

> The damages, therefore, must be so excessive as to strike mankind, at first blush, as being beyond all measure, unreasonable, and outrageous, and such manifestly show the Jury to have been actuated by passion, partiality, prejudice, or corruption. In short, the damages must be flagrantly outrageous and extravagant, where they have no standard by which to ascertain the excess.

*Wells Fargo Armored Serv. Corp. v. Turner,* 543 So. 2d 154, 159 (Miss. 1989) (citations omitted).

Evidence of jury bias, prejudice, or passion may be inferred by contrasting the amount of damages with the injury. The evidence indicates that Aldridge incurred expenses as follows:

Property damage $ 1,800.00

Towing expense 75.00

Medical expenses $ 6,720.62

_____

Total expenses $ 8,595.62

In addition to the above expenses, we also consider past and future pain and suffering in determining whether the jury's verdict was influenced by passion. *Wells Fargo,* 543 So. 2d at 159 (elements which must be examined to determine bias, prejudice, or passion on the part of the jury are: 1. past and future pain and suffering 2. past and future medical expenses, 3. lost wages, and 4. future disability) (citation omitted). When we consider past and future pain and suffering in conjunction with the preceding expenses, we find the jury's award reasonable. This assignment of error lacks merit.

V.

DID THE HEALTH CARE FINANCING ADMINISTRATION'S RIGHT OF SUBROGATION PRECLUDE ALDRIDGE FROM INTRODUCING EVIDENCE OF MEDICAL EXPENSES INCURRED BUT PAID BY MEDICARE?

Medicare paid the majority of the medical expenses incurred by Aldridge. The Appellees argue that Medicare was the true owner of the claim for medical expenses; therefore, Aldridge should have been precluded from introducing evidence of the expenses. In support of this contention, the Appellees cite *McDonald v. Southeastern Fidelity Ins.,* 606 So. 2d 1061 (Miss. 1992).

In *McDonald,* the supreme court held that an insured lacked authority to release a tortfeasor for property losses because the insurer acquired the right to pursue the tort-feasor by paying the insured's claim. *McDonald* 606 So. 2d at 1067-68.

This issue is controlled by federal law; therefore, *McDonald* is not applicable. Pursuant to the Code of Federal Regulations, where services are paid for by Medicare, the Health Care Financing Administration (HCFA) is subrogated to any individual, provider, supplier, physician, private insurer, State agency, attorney, or any other entity entitled to payment by a third party payer. *See* 42 C.F.R. § 411.26(a)(1997). In addition, HCFA may join or intervene in any action related to the events that gave rise to the need for services for which Medicare paid. 42 C.F.R. § 411.26(b)(1997). The language of the preceding regulation is permissive--providing HCFA with the right to join or intervene in any action and does not seem to preclude a Medicare beneficiary from recovering the sums on its behalf. Support for this conclusion is gleaned from section 411.24 of the regulations, which provides:

> (h). . .If the beneficiary or other party receives a third party payment, the beneficiary or other party must reimburse Medicare within 60 days.
>
> (I) Special rules
>
> (1) In the case of liability insurance settlements and disputed claims under employer group health plans and no fault insurance, the following rules applies: If Medicare is not reimbursed as required by paragraph (h) of this section, the third party payer must reimburse Medicare even though it has already reimbursed the beneficiary or other party.

42 C.F.R. §§ 411.24(h)-(I)(1) (1997). Thus, we find that the court properly admitted evidence of the medical expenses incurred by Aldridge.

VI.

DID THE TRIAL COURT ERR BY FAILING TO ORDER ALDRIDGE TO REIMBURSE MEDICARE?

The Appellees argue that the trial court erred when it failed to make provisions in the final judgment directing Aldridge to reimburse Medicare pursuant to its right of subrogation. Appellees fail to cite any authority for this contention. Because the Code of Federal Regulations requires a third party payer to reimburse Medicare, even if it has previously reimbursed the beneficiary, we understand Appellee's anxiety. If Aldridge fails to reimburse Medicare, the Appellees may be subjected to paying

the expenses for a second time. However, the Appellants have not yet suffered this harm. Because Appellants have not yet suffered injury, we are without sufficient grounds for directing the judge to order Aldridge to reimburse Medicare.

In furtherance of its belief that the claims of Medicare should be paid by Appellee from the judgment proceeds, the dissent misstates and takes out of context the majority's discussion of this matter. Medicare is not a party to this action. Pursuant to Rule 19 of the Mississippi Rules of Civil Procedure, the Appellants could have moved for the joining of Medicare as an indispensable party. For reasons known only to them, Appellants chose not to have Medicare joined as a party. In the absence of Medicare being a party, the trial court very correctly chose not to adjudicate the rights or obligations of Medicare. *See American Fidelity Fire Ins. v. Athens Stove Works,* 481 So. 2d 292, 295 (Miss. 1985) (Explaining that before one may be judicially deprived of an important right, one must be given reasonable advance notice of a hearing at which one is afforded a meaningful opportunity to assert and defend that right) (citations omitted). Without such an adjudication, neither the trial court, nor this Court could properly direct the Appellee to pay Medicare from judgment proceeds.

In conclusion, we find the Appellees appeal to be lacking in merit; therefore, we affirm the judgment.

**THE JUDGMENT OF THE CIRCUIT COURT OF TISHOMINGO COUNTY IS AFFIRMED. STATUTORY PENALTIES AND INTEREST ARE ASSESSED. COSTS OF THIS APPEAL ARE TAXED TO THE APPELLANTS.**

**BRIDGES, C.J., COLEMAN, DIAZ, AND HERRING, JJ., CONCUR. PAYNE, J., CONCURS IN PART AND DISSENTS IN PART.**

**McMILLIN, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY THOMAS, P.J., AND SOUTHWICK, J. PAYNE, J., CONCURS IN PART.**

**HINKEBEIN, J., NOT PARTICIPATING.**

# IN THE COURT OF APPEALS 4/22/97

## OF THE

## STATE OF MISSISSIPPI

### NO. 94-CA-01263 COA

**NORMAN LEE SPENCER AND J.D. BOSTICK D/B/A J.D. BOSTICK LOGGING**

**APPELLANTS**

**v.**

**MARY ANN HANNON, EXECUTRIX OF THE ESTATE OF JOE W. ALDRIDGE**

**APPELLEE**


THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND

MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-B


McMILLIN, P.J., DISSENTING:

I respectfully dissent for two reasons, one of which would require reversal for a new trial, and the other of which could easily be resolved by this Court by appropriate mandate.

I.

In my opinion, the trial court committed reversible error when it instructed the jury that the point of juncture of Highway 25 and County Road 181 was an "intersection" within the meaning of Section 63-3-611(2)(c) of the Mississippi Code of 1972. The statutory rule of the road prohibiting passing within 100 feet of an intersection deals only with an intersection that is either (a) marked, or (b) readily distinguishable. Miss. Code Ann. § 63-3-611(2)(c). If the juncture of two roads is neither (a) nor (b), it may be an intersection in the vernacular, but it is not an intersection under this statute. *Gore v. Patrick,* 246 Miss. 715, 150 So. 2d 169, 171 (1963).

There is no proof and no argument that this was a "marked" intersection. Thus, the only way to bring the convergence of these two roads within the operation of this statute would be to demonstrate that their juncture was "readily distinguishable" to a driver approaching the juncture in the direction traveled by the plaintiff and defendant. The question of whether the road junction was "readily distinguishable" was a classic issue of fact to be resolved by the jury based upon the evidence, and the trial court usurped the jury's role when it found the junction to be an intersection under section 63-3-611(2)(c) as a matter of law.

The error in the trial court's ruling is apparent when his remarks are reviewed. He acknowledged that the intersection was not marked, but observed that County Road 181 was "a black-topped paved road which appears to be old Highway 25 and has been there for many years." Neither the condition of a road's surface nor the duration of its existence can substitute for a finding that it was a component of a "readily distinguishable" intersection as envisioned in the statute. One has only to review the photographic exhibits to conclude that there was a question of fact upon which reasonable men might differ as to whether this juncture was an intersection within the meaning of the statute. The trial court should have left the matter to the jury to determine.

The only legitimate issue, in my opinion, is whether this misinforming the jury was harmless error. I would conclude that it was not. There was a hotly contested issue as to whether the plaintiff had properly signaled his turn in advance of cutting into the opposite lane of travel. The plaintiff testified

that he gave a proper signal; however, the defendant driver and two other witnesses testified that the plaintiff did not signal his turn. Without consideration of the intersection issue, the resolution of this contested fact issue was critical to the outcome of the case. However, once the jury was instructed that the juncture was an intersection under the statute as a matter of law, the jury was obligated to find the defendant liable no matter how they resolved the disputed turn signal. This is true since a violation of a rule of the road is, in itself, negligence. *Gore v. Patrick,* 150 So. 2d at 171. The court's action thus deprived the defendant of the opportunity to have the factual issues vital to his defense decided by the proper fact-finder, the jury.

II.

Even were I prepared to join the majority, I would be concerned with the majority's refusal to require the plaintiff to satisfy the claims of the subrogated health insurance providers out of the judgment. Early in the trial, the court discussed the fact that there were health insurance providers with subrogation rights who were not parties to the litigation. The court was ruling on the admissibility of medical bills that had been paid by these non-parties. The court expressed some concern, but indicated that it would allow the evidence. The court then said, "In order to avoid the multiplicity of actions and lawsuits we are going to proceed today. If the Plaintiff does recover the Court will enter in its final judgment provisions to take care of these subrogated parties." The plaintiff immediately responded with the following assurance: "Your Honor, for the record, we want to put on the record that we agree to honor the subrogation interest of Blue Cross Blue Shield of Alabama and Mississippi on these claims that they filed." The final judgment did not, in fact, do what the trial court had earlier indicated it would do. The matter was immediately brought to the trial court's attention in the defendant's new trial motion, which alleged plainly that "[t]he judgment fails to order payment of amounts owed to entities with a subrogation interest." The trial court overruled the new trial motion without hearing in a one-sentence order. The plaintiff raised this failure as an issue on appeal. Inexplicably, the plaintiff continues to resist any effort to correct what seems merely an oversight.

If the plaintiff, once in possession of the judgment proceeds, fails to voluntarily honor his subrogation obligations, then the defendant is exposed to potential double liability and the very multiplicity of suits that the trial court committed to guard him against. Requiring these claims to be satisfied out of judgment proceeds prejudices no one and merely holds the plaintiff to a promise he has already made. The majority says that "we are without sufficient grounds for directing the judge to order [these claims paid.]" What more sufficient grounds could there be than the statements of the trial court and plaintiff's counsel that I have quoted above? Were I inclined to otherwise affirm this judgment, I would certainly modify it to direct that the subrogated insurance claims be satisfied from the judgment proceeds.

**THOMAS, P.J., AND SOUTHWICK, J., JOIN THIS SEPARATE WRITTEN OPINION. PAYNE, J., CONCURS IN PART.**