360 A.2d 540.

J. GERARD LEMIEUX *vs.* AMERICAN UNIVERSAL INSURANCE COMPANY.

JULY 23, 1976.

PRESENT: Bevilacqua, C.J., Paolino, Joslin and Kelleher, JJ.

686

PAOLINO, J. This is an action to recover damages for personal injuries suffered by the plaintiff when his automobile collided with the negligently operated automobile of the defendant's insured. The case was tried before a jury on the issues of damages and the sufficiency of the plaintiff's attempts to personally serve the defendant's insured with the complaint and summons. The jury returned a verdict in the plaintiff's favor in the amount of $10,000. The defendant prosecutes the instant appeal from the denial of its motions to dismiss and for summary judgment and from the denial of its motion for a new trial.

The facts of this case are relatively simple. In November 1968, automobiles owned and operated by plaintiff and one Antonio DiBona collided in the city of Cranston. Several weeks later, plaintiff's insurer paid $338.50 to plaintiff pursuant to the collision part of their insurance contract to cover damages to plaintiff's automobile. In exchange therefor, plaintiff executed a subrogation agreement subrogating his insurer to his rights to recover for property damage. In April 1969, DiBona brought suit against plaintiff in response to which plaintiff's insurer filed an answer asserting a counterclaim for the subrogated property damage claim.

Before DiBona's action was reached for trial in the Superior Court, plaintiff sought medical treatment for personal injuries allegedly sustained in the accident. His condition was diagnosed as a herniated intervertebral disc and a series of treatments for said condition ensued. The plaintiff was considered by his physician to have been cured of the condition by October of 1970.

After a trial in the District Court, the action instituted by DiBona was appealed and tried before a Superior

Court jury in April 1970, and judgment was rendered in favor of Lemieux both as to the complaint and as to the counterclaim instituted by his insurer. In the latter instance, judgment was in the amount of $358.81, the full amount paid to Lemieux under the subrogation agreement plus interest. A notation was entered on the record in that case indicating that judgment on the counterclaim had been fully satisfied.

Thereafter, in October 1970, a complaint was filed by Lemieux in the Superior Court naming DiBona as defendant. Said complaint and a summons were delivered to the sheriffs' department with instructions to serve same on DiBona. The sheriff was unsuccessful in his attempt to locate DiBona and he so informed Lemieux's attorney. The papers were returned to the sheriff in order that another try might be made to serve DiBona. After the second attempt proved unsuccessful, the complaint and summons were returned to Lemieux's attorney bearing a "non est inventus" notation.

Citing G. L. 1956 (1968 Reenactment) §§27-7-1 and 27-7-2,[1] plaintiff Lemieux brought suit directly against

---

[1]General Laws 1956 (1968 Reenactment) §§27-7-1 and 27-7-2 read as follows:

"27-7-1. Provision for direct liability of insurer to person injured. — Every policy hereafter written insuring against liability for property damage or personal injuries or both, and every policy hereinafter written indemnifying any person by reason of such liability, other than payment of compensation under chapters 29 to 38, inclusive, of title 28, shall contain provisions to the effect that the insurer shall be directly liable to the injured party and, in the event of his death, to the party entitled to sue therefor, to pay him the amount of damages for which such insured is liable.

"27-7-2. Remedies of injured party against insurer. — Such injured party, or, in the event of his death, the party entitled to sue therefor, in his suit against the insured, shall not join the insurer as a defendant. If, however, the officer serving any process against the insured shall return said process 'non est inventus,' the said injured party, and in the event of his death, the party entitled to sue therefor, may proceed directly

DiBona's insurer, defendant herein. The complaint alleged that DiBona was negligent in the operation of his motor vehicle; that, as a result of said negligence, plaintiff suffered bodily injury; that he was thereby prevented from transacting his business; that he suffered pain and suffering; and that he incurred medical expenses.

The defendant moved to dismiss plaintiff's complaint pursuant to Super. R. Civ. P. 12(b)(6), charging that the complaint failed to state a claim upon which relief could be granted. The gravamen of the motion was that, because DiBona had satisfied the judgment entered on the counterclaim in the earlier case between DiBona and plaintiff's insurer, plaintiff was foreclosed from maintaining the instant action. After a hearing, a justice of the Superior Court denied the motion to dismiss.

The defendant thereupon filed an answer to plaintiff's complaint whereby it asserted that DiBona was, at all times, within the bailiwick of the sheriff who had attempted service; that plaintiff's failure to make a good-faith attempt to obtain service of process upon DiBona deprived the Superior Court of jurisdiction over defendant; and that the jury's verdict in favor of plaintiff's insurer in the prior action and satisfaction of the judgment entered thereon, deprive plaintiff of any further claim against defendant arising out of the 1968 accident.

Both parties submitted motions for summary judgment and accompanied the same with affidavits. The plaintiff's motion was founded on the assertion that the verdict in

against the insurer. Said injured party, or, in the event of his death, the party entitled to sue therefor, after having obtained judgment against the insured alone, may proceed on said judgment in a separate action against said insurer; provided, however, that payment in whole or in part of such liability by either the insured or the insurer shall, to the extent thereof, be a bar to recovery against the other of the amount so paid."

favor of plaintiff's insurer in the prior action is res judicata in the instant case and thus that there is no genuine issue as to any material fact. In the alternative, plaintiff argued, in effect, that, at the very least, he was entitled, by virtue of the prior verdict, to summary judgment on the issue of liability. The defendant's motion reasserted the position it maintained throughout that this very controversy has already proceeded to trial on the merits, that the earlier judgment had been satisfied, and that plaintiff is thereby barred from pursuing the instant action.

The then presiding justice of the Superior Court heard these motions and ordered that plaintiff's motion be granted on the question of liability only and that defendant's motion be denied.

The remaining issues, namely, the question of damages and the question of whether a good-faith attempt was made to serve process upon DiBona before resort was made to the procedures prescribed by §§27-7-1 and 27-7-2, were tried before a justice of the Superior Court and a jury in October 1974. The jury returned a separate verdict that plaintiff's attempts to notify DiBona of the pendency of the action were made in good faith and the trial then continued on the issue of damages alone. The jury returned a verdict for plaintiff in the amount of $10,000, and judgment was entered accordingly.

The defendant filed a motion for a new trial on the grounds that the jury's finding regarding plaintiff's good faith in attempting to serve DiBona was against the law and the facts and that the verdict was grossly excessive and was the result of prejudice. Said motion was denied and defendant appealed to this court on the grounds hereinbefore set forth.

## I

The defendant's contention regarding the assignments of error on appeal are fundamentally the same as the argu-

ments presented by it in the course of arguing the several motions made by it in the Superior Court. The first alleged error is that its motions to dismiss and for summary judgment should have been granted on grounds of res judicata by virtue of the earlier judgment against DiBona, and that plaintiff's motion for summary judgment should have been denied for the same reason.

We are constrained to note at the outset, that defendant's reliance on the doctrine of res judicata is somewhat misplaced. From the drift of its argument, it would appear that defendant contends that plaintiff should be precluded from maintaining this suit because he has missed his one opportunity to press these claims as an adjunct to the original action brought against him by DiBona. In short, defendant seems to be urging that this claim of personal injuries constitutes a compulsory counterclaim to defendant's original claim and that, because the original claim has proceeded to judgment without the counterclaim having been asserted, the doctrine of res judicata bars this attempt to assert the counterclaim as a separate action. Although defendant has not articulated it as such, its position must be taken to be that Super. R. Civ. P. 13(a) [hereinafter sometimes referred to as Rule 13(a)], which requires the pleading of compulsory counterclaims, somehow precludes this action.

Even assuming that this case presents such a situation, there is serious doubt among the commentators that res judicata is the theoretical basis for the preclusive effect of Rule 13(a).[2] But the more serious challenge to defend-

---

[2] It has been a common practice among many authorities when expounding upon the nature of the consequences which stem from a failure to assert a compulsory counterclaim to state that such claims are precluded "under the doctrine of merger or bar" from being subsequently prosecuted. *See, e.g.,* Scott, *Collateral Estoppel by Judgment,* 56 Harv. L. Rev. 1, 27 (1942); *Developments in the Law — Res Judicata,* 65 Harv. L. Rev. 818, 832 (1952). More recent commentators have attacked the

ant's hypothesis lies in its presumed characterization of plaintiff's personal injury action as a compulsory counterclaim. Rule 13(a) does require that a pleading include as a counterclaim any claim against the opposing party "if it arises out of the transaction or occurrence" which is the basis of the opposing party's claim. The rule states however:

> "* * * that such a claim need not be so stated * * * if the opposing party's claim is for damage arising out of the ownership, maintenance, operation, use, or control of a motor vehicle by the pleader."

A counterclaim that falls within this exception is obviously not compulsory and it is the pleader's option whether to include such a counterclaim in the pleading or to pursue it separately. Thus the excepted counterclaims may properly be labelled permissive counterclaims and are governed by Super. R. Civ. P. 13(b).[3] The so-called "Motor vehicles exception" was conceived and originally implemented by the Supreme Judicial Court of Maine as an amendment to the original Federal Rule 13. That court recognized that Rule 13(a), as originally promulgated, performed the valuable function of avoiding the possibility of two trials arising from a single set of facts. However, it became apparent that, for the simple reason that an insurer's interest in quickly settling accident claims is not always compatible with a defendant-insured's interest in pursuing fully

---

usage of such terms as merger, bar and res judicata as being undesirable in the context of compulsory counterclaims in that strict application of the principles of these doctrines would cause forfeiture of a defendant's claim where the judgment is by default or consent. These authorities suggest a substitution of notions such as waiver or estoppel in place of the more restrictive doctrine of res judicata to avoid such harsh results. 6 Wright & Miller, *Federal Practice and Procedure,* §1417 at 98 (1971); 1 Kent, *R.I. Civ. Prac.* §13.3 (1969).

[3]Super. R. Civ. P. 13(b) reads as follows:

"(b) Permissive Counterclaims. A pleading may state as a counterclaim any claim against an opposing party."

his own claims against a plaintiff, the rule's objective did not work satisfactorily in motor vehicle accident cases where virtually all parties carry liability insurance. 1 Kent, *R. I. Civ. Prac.* at 125-26 (1969), *quoting* Field and McKusick, *Maine Civ. Prac.* (1959) (Supp. 1962) at 24-25.

The case at bar obviously arose "out of the ownership, maintenance, operation, use or control" of an automobile and thus falls squarely within the purview of the motor vehicles exception to Rule 13(a). Therefore, any claim for damages by Lemieux against DiBona arising out of their 1968 accident need not have been included in a responsive pleading to DiBona's original complaint. Such would constitute a permissive, not a compulsory, counterclaim. The plaintiff herein is not precluded from pressing the claim for damages as a separate cause of action even if facts raised as a defense to the prior action constitute the basis of his present claim. *See Seager* v. *Foster,* 185 Iowa 32, 34, 169 N.W. 681, 682 (1918); Restatement, *Judgments,* §58, comment *d* at 234 (1942). *See generally,* Scott, *Collateral Estoppel by Judgment,* 56 Harv. L. Rev. 1, 27 (1942).

The only question remaining, therefore, with regard to the preclusive effect of the prior judgment is whether plaintiff, by virtue of the fact that one who was in privity with him, namely, his insurer, chose to assert a counterclaim against DiBona based on its subrogated property damage claim, impermissibly "split" his cause of action when he instituted the instant claim for personal injury damages as a separate action.

The defendant urges that we follow the rule that one set of circumstances gives rise to but *one* cause of action and that damages for personal injury and property damage are two elements of the one suit. The defendant relies on *Sibson* v. *Robert's Express, Inc.,* 104 N. H. 192, 182 A.2d 449 (1962), where the court held that a cause of action resulting in both personal injury and property damage

may not be the subject of more than one suit; that recovery for one element of the claimant's damages bars recovery for any other element for which recovery might have been had in the original action but was not sought. *Id.* at 193, 182 A.2d at 450. *Accord, Ulin* v. *Flanzbaum,* 54 R. I. 345, 173 A. 80 (1934).

An increasing number of jurisdictions have adopted a view contrary to that espoused by defendant herein. These courts note that the usual situation in automobile accident cases is that the insurer reimburses the insured for property damage in exchange for a subrogation of said claim. The insurer's interest in quickly disposing of such claims and the fact that medical treatment is typically a protracted process, usually result in the property damage claim being subrogated long before any personal injury claim is finalized. Thus it is often the case that the insurer is ready to litigate its claim against the tortfeasor before the insured has even compiled his medical bills.

To alleviate the harshness that the no-split rule obviously precipitates in this situation, many courts have carved out an exception to that rule in cases where one element of damages is the subject of liability insurance. One court has framed the exception in the following manner:

> "The underlying reason for the rule against splitting a cause of action is salutary. The rule has as its purpose, as every student of the law knows, 'that litigation should have an end and that no person should be unnecessarily harrassed with a multiplicity of suits.' However, a rule such as the one under consideration should not be declared rigid, inflexible and inexorable when such declaration would in many, many instances, for the sake only of convenience to a putative wrongdoer, defeat the ends of justice." *Rosenthal* v. *Scott,* 150 So.2d 433, 439 (Fla. 1963).

Similarly, a New Jersey Superior Court has ruled that, where an insurance company has been subrogated to the

property damage claim and brought suit before the insured sued on his personal injury claim, there should be an exception to the rule against splitting the cause of action. *Reardon* v. *Allen,* 88 N. J. Super. 560, 564, 213 A.2d 26, 28 (1965). It was observed that this very narrow exception would preserve the interests of the insured who, by virtue of a subrogation agreement, has no formal or proprietary interest in the litigation or outcome of the property damage suit. It seemed to that court that it was unreasonable to bind an insured with the results of an action over which he had no control. *Id.* at 567, 213 A.2d at 29-30.

A series of Ohio appellate decisions have grafted the same exception onto the otherwise strictly enforced no-split rule but have steadfastly adhered to the principle that only one cause of action arises from one wrongful act even when both property damage and personal injury result therefrom. *E.g. Hoosier Cas. Co.* v. *Davis,* 172 Ohio St. 5, 9, 173 N.E.2d 349, 352 (1961); *see Nationwide Ins. Co.* v. *Steigerwalt,* 21 Ohio St.2d 87, 255 N.E.2d 570 (1970).[4]

It is our view that, in a case such as the one presently before us, where an insurer has become subrogated to that portion of the insured's claim against a tortfeasor for property damage and said insurer brings its action on said claim before the insured brings his action for personal injuries, there should be an exception to the rule against splitting causes of action. In these situations, the insurer and the insured should each be permitted to seek recovery

---

[4]Other courts have concluded that insurers and insureds may maintain separate actions on separate elements of damages, but they reach that result on the theory that a wholly separate right of action vests in the insurer when it pays a claim insofar as said insurer is permitted to sue on the subrogated claim in its own name. *General Exch. Ins. Corp.* v. *Young,* 357 Mo. 1099, 1107, 212 S.W.2d 396, 401 (1948).

for property damage and personal injury respectively. Because the realities of modern insurance and subrogation tend to place the insurer and its insured somewhat at odds, they do not allow for any other result. Furthermore, insofar as Super. R. Civ. P. 13(a) reflects the spirit of the Maine amendment discussed above, that Rule would tend to bolster the realization inherent in the present holding that the separability of the respective interests of the insurer and the insured is ample reason to justify splitting the cause of action.

In so holding, we wish to emphasize that this does not abrogate the rule against splitting causes of action but merely creates an exception thereto. We still adhere to the principle that, absent exceptional circumstances, a tortfeasor cannot be compelled against his will to defend two actions for the same wrong. *Hospital Serv. Corp.* v. *Pennsylvania Ins. Co.*, 101 R. I. 708, 716, 227 A.2d 105, 111 (1967), and we reaffirm our support of the objective of the rule to prevent a multiplicity of suits. *Ulin* v. *Flanzbaum, supra* at 347, 173 A. at 81. *See Dearden* v. *Hey*, 304 Mass. 659, 663-64, 24 N.E.2d 644, 646-47 (1939).

We would like to emphasize also that our holding in the instant case is not, as intimated by defendant, inconsistent with our holding in the case of *Nardolillo* v. *Carroll*, 70 R. I. 133, 37 A.2d 659 (1944). In that case, Nardolillo and Carroll had each instituted an action against the other in Superior Court and District Court respectively for damages arising out of one accident. Carroll's action was filed first and was tried first. The District Court and a Superior Court jury found in Carroll's favor and Nardolillo appealed to this court. We affirmed. *Carroll* v. *Nardolillo*, 67 R. I. 389, 392, 24 A.2d 417, 418 (1942). Carroll then filed a motion to dismiss Nardolillo's still-pending Superior Court action and said motion was granted. Nardolillo appealed the dismissal to this court

and it was held that, since the issue of liability had been decided adversely to him in the previous case, Nardollillo was barred under the doctrine of res judicata from seeking a readjudication of the same issue in the latter cause of action, *Nardolillo* v. *Carroll, supra* at 134-35, 37 A.2d at 660, even though the prior action concerned property damage and the later action sought damages for personal injury. The essence of the *Nardolillo* holding, therefore, was not that the plaintiff had impermissibly split his cause of action but that he was bound by the adverse determination on the question of liability in the prior action. That case is of no aid to defendant herein.

The trial justice was, therefore, correct in denying defendant's motions to dismiss and for summary judgment. Furthermore, because there was the requisite identity of parties and issues and because the judgment in the prior action had become final, the doctrine of res judicata was properly invoked by the trial justice in granting plaintiff's motion for summary judgment on the issue of liability. *Air-Lite Prods., Inc.* v. *Gilbane Building Co.,* 115 R. I. 410, 422, 347 A.2d 623, 630 (1975). There is sufficient identity of parties because plaintiff's insurer, who defended against the prior suit instituted by DiBona, stood in privity with plaintiff and advanced no independent rights of its own but asserted the defense and counterclaim solely by subrogation to whatever rights plaintiff had against DiBona. *Nardolillo* v. *Carroll, supra* at 135, 37 A.2d at 660-61. Similarly, the basic issues in each case were identical, *viz.,* whether plaintiff or DiBona was negligent and whether said negligence was the proximate cause of the accident. It was found in the prior action that liability for the accident lay in DiBona and not in plaintiff. Lastly, it is obvious that the judgment in the prior action attained finality because the judgment in favor of plaintiff's in-

surer was entered and has been fully satisfied with no appeal having been taken.

For the reasons stated, defendant's appeal from the denial of its motions to dismiss and for summary judgment is denied. The grant of plaintiff's motion for summary judgment on the issue of liability only is affirmed.

## II

The defendant's second assignment of error is that the trial justice erred in denying its motion for a new trial. The defendant's primary contention in this respect is that the *non est inventus* return was invalid by virtue of plaintiff's failure to exert a good-faith effort to locate DiBona in order to serve process upon him. It alleges that the jury's finding to the contrary was against the law and the evidence.

Under G. L. 1956 (1968 Reenactment §27-7-2,[5] a plaintiff shall not join the defendant's insurer as a party unless the officer who is directed to serve process upon the insured returns that process *non est inventus*. In the event that such a return is made, the injured plaintiff may proceed directly against the insurer. Such plaintiff must demonstrate that he has made a good-faith effort to serve the insured. This court has repeatedly held that "good faith" as used in this context, connotes something more than the absence of fraud. The term presupposes a reasonably diligent effort to obtain service on the insured such as would be made if no question of insurance were involved. *Collier* v. *Travelers Ins. Co.*, 97 R. I. 315, 321, 197 A.2d 493, 496 (1964). Whether, in a given case, the plaintiff has expended sufficient effort to satisfy the

---

[5]For the text of G. L. 1956 (1968 Reenactment) §27-7-2, see *note 1 supra*.

good-faith requirement of §27-7-2 is a question of fact for the trier thereof. *Id.* at 322, 197 A.2d at 496.[ª]

Turning to a consideration of the present case, defendant is arguing, in essence, that the facts adduced at the trial do not support the jury's verdict that plaintiff was duly diligent in his attempts to personally serve DiBona. It argues that the several attempts made by the sheriff at plaintiff's request to serve DiBona over a 2-week period in October 1970 do not constitute a good-faith effort in view of the fact that DiBona could very well have been on a 2-week vacation at that time. In so many words, defendant urges that it be granted a new trial because these facts admit of only one inference — that plaintiff's efforts lacked the amount of diligence contemplated by §27-7-2.

In ruling on a motion for a new trial, a trial justice sits as a thirteenth juror. His function is to independently review all of the material evidence in the light of his charge to the jury, passing on the weight thereof, and assessing the credibility of the witnesses who have appeared before him. Having so scrutinized the evidence, it is incumbent upon the trial justice to decide whether the particular evidence and the reasonable inferences to be drawn therefrom are so nearly balanced that reasonable men could

---

[ª]In *Harter* v. *Home Indemnity Co.,* 111 R. I. 340, 302 A.2d 793 (1973), this court prescribed a procedure for the efficient disposition of questions involving the correctness of joining an insurer as a party defendant. We held that a single hearing should be conducted on the question of the plaintiff's diligence in serving process on the defendant and on the merits. In addition, we held that if the evidence produced at that hearing was such that reasonable men might differ on the question of diligence, the trial justice should submit the question to the jury for special findings with instruction to proceed with a hearing on the merits if they found for the plaintiff on the question of diligence. *Id.* at 353-54, 302 A.2d 800. There is no allegation by defendant that, in the instant case, the trial judge did not correctly follow the prescribed procedures or that his instructions to the jury in this regard were faulty.

differ as to the results of the case. If the evidence and the reasonable inferences are so balanced, he must deny the motion for a new trial. Only if the verdict is against the fair preponderance of the evidence and fails either to do justice between the parties or to respond to the merits of the controversy, may such a motion be granted and a verdict set aside. *Gordon* v. *Campanella Corp.*, 112 R. I. 417, 420-21, 311 A.2d 844, 847 (1973); *Barbato* v. *Epstein*, 97 R. I. 191, 196 A.2d 836 (1964). On appeal, the appellant must persuade this court that the findings on which the trial justice relied in deciding the motion were clearly wrong or that he overlooked or misconceived material evidence on a controlling issue in the case. *Gordon* v. *Campanella Corp.*, *supra* at 421, 311 A.2d at 847.

Our review of the record indicates that the trial justice, in his charge to the jury on the question of diligence, was faithful to the criteria set forth by this court in *Collier* v. *Travelers Ins. Co.*, *supra*. We are satisfied also that the trial justice correctly perceived and executed his duty in reviewing the evidence pursuant to defendant's motion for a new trial. He felt that on the basis of DiBona's own vagueness regarding his whereabouts in October 1970 and on the strength of the sheriff's testimony that he spoke to the postmaster several times and visited DiBona's legal address repeatedly and the tax assessor's testimony which contradicted DiBona's account of his business activities in October 1970, the jury verdict should not be disturbed. We cannot agree with defendant that the trial justice either overlooked or misconceived the record evidence which tended to support plaintiff's claim that due diligence had been exercised in the attempt to serve DiBona. In this respect therefore, the trial justice's denial of defendant's motion for a new trial is affirmed.

Similarly, on the question of whether a new trial was warranted to reconsider the amount of damages to which

plaintiff was entitled, the trial justice bore his burden of reviewing the record evidence in the light of the law of the case. He made specific note of plaintiff's position as manager in a life insurance company, and that plaintiff's injury resulted in his loss of wages through absences from work. It was noted also that plaintiff had suffered back pain for 21 or 22 months and that the testimony of plaintiff's attending physician as to the nature and severity of the injury was virtually uncontradicted. The trial justice concluded that on the basis of this evidence, and in view of his instruction to the jury that no fixed dollar amounts may be assigned to pain and suffering, the $10,-000 verdict was not excessive.

The defendant has not satisfied its burden of demonstrating that the trial justice overlooked or misconceived material evidence on the question of damages or that he was otherwise clearly wrong. We therefore affirm his denial of the defendant's motion, on these grounds, that it be afforded a new trial.

The defendant's appeal is denied and dismissed, the judgment appealed from is affirmed and the case is remitted to the Superior Court for further proceedings.

Mr. Justice Doris did not participate.

*John F. Cuzzone, Jr., Quinn, Cuzzone & Geremia,* for plaintiff.

*Eugene V. Higgins,* for defendant.