606 So.2d 1061 (1992)
Gregory McDONALD
v.
SOUTHEASTERN FIDELITY INSURANCE COMPANY.
No. 89-CA-0636.
Supreme Court of Mississippi.
August 5, 1992.
John L. Hunter, David O. McCormick, Cumbest Cumbest Hunter & McCormick Firm, Pascagoula, for appellant.
Thomas R. Harris, O'Riorden Mann Ingram & Dunkle, Sarasota, James B. Galloway, Galloway & Galloway, Gulfport, for appellee.
Before DAN M. LEE, P.J., and ROBERTSON and McRAE, JJ.
DAN M. LEE, Presiding Justice, for the Court:
This is an appeal from the Jackson County Circuit Court from a grant of summary judgment entered against an insured, Gregory McDonald, in favor of his insurer, Southeastern Fidelity Insurance Company (Southeastern). The only issue in this appeal is whether or not the lower court erred as a matter of law in entering a judgment against McDonald in the amount of $12,319.78, together with costs. Finding that the lower court erred in its application of law, we find merit in McDonald's appeal. Consequently, we reverse the entry of summary and "Final Judgment" in this case and remand the same to the Jackson County Circuit Court for further proceedings.

FACTS
The facts of this case  what happened, and particularly, when  are crucial to the resolution of the legal question which we address.
On February 26, 1987, Gregory McDonald was driving his jeep vehicle on Highway 26 near the City of Wiggins, Mississippi, when he encountered a Browning Ferris Industries (BFI) garbage truck. Apparently, the BFI truck had been picking up garbage on the north side of the highway, and it proceeded to cross the highway to the south side to pick up more garbage. As the BFI truck came across to the south side of Highway 26, the truck struck McDonald's jeep in McDonald's lane of traffic. McDonald's jeep was a total loss. Additionally, McDonald sustained personal injuries as a result of the accident; however, the record as we find it provides few details regarding the nature and severity of McDonald's personal injuries.
Southeastern was notified of the accident involving its insured, and the company conducted a routine investigation. Southeastern's own evaluation was that BFI's liability was clear. Therefore, on April 24, 1987, approximately two months after the accident, Southeastern paid McDonald $12,999.00 pursuant to his policy of insurance. This amount represented payment for McDonald's *1063 property damage only.[1] Furthermore, McDonald's policy of insurance which he held with Southeastern contained a standard subrogation clause which provided as follows:
19. Subrogation  Coverages
A, B, C, D, E, F, G and H
In the event of any payment under this policy, the Company shall be subrogated to all the Insured's rights of recovery therefor against any person or organization and the Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The Insured shall do nothing after loss to prejudice such rights.
Approximately three weeks later on May 11, 1987, McDonald filed suit in the Jackson County Circuit Court against BFI and its driver. Significantly, the suit which McDonald filed against BFI sought recovery for his personal injuries only, with no claim or mention of the loss of property. There was very little movement with this litigation until February 12, 1988, when McDonald's attorney, John Hunter, spoke with Carla Smith, a Southeastern representative. Mr. Hunter informed Ms. Smith that his client's lawsuit against BFI addressed personal injuries only and that he would not be representing Southeastern's subrogation interest. After being apprised of this information, Southeastern chose to do nothing. In the meanwhile, McDonald's lawsuit against BFI was set for trial on May 24, 1988. However, on May 9, 1988, McDonald and BFI reached a settlement, and McDonald executed a release of his claim against BFI.
The release executed by McDonald purported to discharge "any and all actions, claims, and causes of action" on account of the automobile accident between McDonald and BFI. In pertinent part, the release provided as follows:
... I, Gregory T. McDonald, do hereby release, acquit, and forever discharge Browning-Ferris Industries of Mississippi, Inc., Samuel Forehand, and their successors, assigns, or corporations whatsoever, having any liability in the premises, from any and all actions, claims, and causes of action, on account of that automobile accident... .
This settlement shall operate as and be a complete accord and satisfaction of any and all claims for damages by the undersigned which they may now or hereinafter have on account of or anyway connected with the hereinabove referred to incident. The undersigned parties further agree, and warrant that there have been no assignments of any rights or claims arising out of the incident, to any person or persons not joining in this release and the undersigned agrees that the hereinafter released parties shall forever be free of liability in the premises as if the aforesaid incident had never occurred. It is further understood and agreed that the aforesaid payment shall not in any manner be construed as an admission of liability on the part of any parties named herein but that such payment constitutes solely a compromise settlement and in accord and satisfaction of the disputed claims of the undersigned Gregory T. McDonald in an effort by said parties to purchase their peace. Those released hereby deny all liability in the premises and maintain they were not liable to anyone for anything.
* * * * * *
It is further agreed by Gregory T. McDonald, the undersigned, that he is the sole beneficiary of the settlement funds and that there are no outstanding medical or other accounts due that may have a lien against the payment of this settlement. Gregory T. McDonald further agrees to indemnify and defend the released parties at his cost as a result of any claims made against the released parties on account of this settlement and further states that there are no persons owed any funds and that there have been no assignments made by him against the settlement funds received herein.
*1064 When Southeastern learned of McDonald's release of BFI, Southeastern filed suit on June 27, 1988, against their insured, Gregory McDonald, and BFI, jointly and severally, seeking recovery in the amount of $12,319.87, together with interest, attorneys' fees and court costs. Regarding BFI, the complaint alleged that the negligence of BFI's driver was the direct, sole and proximate cause of the damage suffered by its insured, McDonald. Regarding McDonald, Southeastern alleged that its insured had breached the subrogation agreement when he executed a "general release" in favor of BFI. McDonald counterclaimed and alleged that his insurer had breached the covenants of good faith and fair dealing between an insurer and an insured by filing suit against him. BFI filed a Motion To Dismiss itself from the Southeastern suit "pleading" the release executed by McDonald as an absolute and affirmative defense. On January 11, 1989, a hearing was held on BFI's Motion To Dismiss. The trial court, perhaps improvidently, agreed with BFI, and an Order of Dismissal was entered on January 20, 1989. The Order of Dismissal found the release executed by McDonald to be total and complete as to any cause of action against BFI:
This Court is of the opinion that the Release given by the Defendant, Gregory McDonald, to BFI released BFI from any and all claims arising out of the accident between the parties; that the Release is total and complete as to any cause of action against BFI; and that the Defendant, Gregory McDonald, agreed to indemnify BFI for any and all claims made against BFI as a result of the accident including but not limited to property damage.
Southeastern did not pursue an appeal from the Order dismissing BFI from the suit, and BFI's dismissal left only Southeastern, as plaintiff, and McDonald, as defendant.
McDonald first filed a Motion for Summary Judgment on December 22, 1988. In his Motion, McDonald alleged that he released BFI from his personal damages only, not property damage. Five days later, December 27, 1988, Southeastern filed a Motion for Partial Summary Judgment based on the alleged breach of the subrogation clause:
Comes now Southeastern Fidelity Insurance Company, pursuant to M.R.C.P. 56, and moves the Court for Summary Judgment in its favor against the Defendant, Gregory McDonald, on the breach of insurance contract subrogation clause in this cause, and for ground would show that there is no genuine issue as to any material fact with respect to the breach of contract and that Southeastern Fidelity Insurance Company is entitled to a judicial determination as a matter of law that Gregory McDonald breached the insurance contract subrogation clause with respect to his Southeastern Fidelity Insurance Company insurance policy.
A hearing was held on both parties' summary judgment motions on March 15, 1989. After hearing arguments of counsel, the trial judge took the matter under advisement and entered summary judgment in favor of Southeastern, followed by a Final Judgment on May 22, 1989.
First of all, the lower court found that McDonald breached the contract of insurance subrogation clause by releasing BFI from any and all claims, including a claim for property damage. Curiously, the lower court went further and found that Southeastern need not prove negligence by BFI in order to recover from McDonald. Consequently, the lower court held that McDonald was liable to Southeastern in the amount of $12,319.87, together with costs. Therefore, McDonald brings this appeal from the adverse judgment in the court below.

DISCUSSION
It has long been the rule in this state that a tortious act gives rise to but a single cause of action. Kimball v. Railroad Company, 94 Miss. 396, 48 So. 230 (1909). See Duett v. Pine Mfg. Co., 209 Miss. 830, 843, 48 So.2d 490, 496 (1950) (tortious act gives rise to single cause of action); Fewell v. New Orleans & N.E.R. Co., 144 Miss. 319, 324, 109 So. 853, 853 *1065 (1926) (same). However, like most rules of law, exceptions have been carved. One such exception exists where one element of the damage, usually property damage, is the subject of insurance while the remaining elements of damage are not. This exception was explained in the following annotation:
In some jurisdictions which follow the rule that a single cause of action arises from an injury which causes both personal injury and property damage, an exception has been drawn in cases where one element of the damage, usually the property loss, is the subject of insurance, and strict application of the single-cause principle would prejudice the interest of either the insured or the insurer. Thus, the courts which have applied this exception to the general rule against splitting causes of action have held that in situations in which an injured party has assigned one element of his cause of action to his insurer to which the insurer thereby becomes subrogated, and thereafter, either the injured party or his insurer obtains a judgment against the tortfeasor on the one element of the damage, neither the insured nor his insurer is barred from maintaining an action against the tortfeasor on the remaining element of the damage.
Andrea G. Nadel, Annotation, Simultaneous Injury to Person and Property As Giving Rise to Single Cause of Action  Modern Cases, 24 A.L.R. 4th 646, 650 (1983).
The policy reasons behind the exception are apparent. A subrogated property damage claim is often ripe for final disposition long before the personal injury claim. In the usual automobile accident case, the extent of property damage can be quickly ascertained, but personal injuries requiring medical treatment could result in a prolonged process involving months or even years. Consequently, the insurance subrogation exception promotes prompt settlement of property claims between an insured and his carrier without prejudicing either the insured's right to sue the tortfeasor for personal injuries or the insurer's right to bring a subrogated property claim against the tortfeasor. Lemieux v. American Universal Ins. Co., 116 R.I. 685, 360 A.2d 540, 544 (1976). A contrary rule would discourage prompt settlements by requiring the injured plaintiff to wait and bring all of his claims in one lawsuit and not settle the property damage claim with his own carrier as soon as practicable. McKibben v. Zamora, 358 So.2d 866, 868 (Fla.App.3d 1978). In addition to benefitting the insured, the carrier is also benefitted since its reputation is dependent in part upon the timely payment of claims.
The subrogation exception has been a part of our jurisprudence since the case of Underwriters at Lloyd's Ins. Co. v. Vicksburg Traction Co., 106 Miss. 244, 63 So. 455 (1913) (hereinafter Vicksburg Traction). In Vicksburg Traction, Mr. F.E. O'Neil's automobile was struck by an electric car when he crossed the tracks of the Vicksburg Traction Company. The automobile was damaged, and Mr. O'Neil suffered personal injuries. In accordance with his policy of insurance, Mr. O'Neil received payment from his insurer for the damages to his automobile; and, he executed an article of subrogation whereby he assigned to Lloyd's all of his right, claim and interest against the Vicksburg Traction Company for the damages to his automobile. Vicksburg Traction Co., 106 Miss. at 249, 63 So. at 456. Mr. O'Neil then brought suit against Vicksburg Traction Company for personal injuries only sustained in the collision, and he recovered a judgment. The appellant, Underwriter's at Lloyd's, as O'Neil's assignee of the property damage claim, brought suit against Vicksburg Traction Company seeking recovery for damages to Mr. O'Neil automobile. Citing the "one cause of action rule," Vicksburg Traction Company pleaded that Mr. O'Neil's judgment for personal injuries operated as a complete bar to Lloyd's suit for property damages since all injuries stemmed from the same collision. The lower court agreed, and appeal was taken to this Court by O'Neil's insurer, Underwriters at Lloyd's. This Court reversed and discussed the differences in this case as compared to Kimball v. Railroad Company, *1066 94 Miss. 396, 48 So. 230 (1909), which stands for the general prohibition of splitting causes of action:
We see a difference between this case and the Kimball Case. Mr. Kimball brought both suits against the railroad company. The entire cause of action was in him when he filed his first suit for damages done his personal property and when he sued to recover for injuries to his person. He himself split his cause of action, which all along was wholly in him. This is not so in the case now before us. Mr. O'Neil has assigned all of his right and interest against the traction company for damages to his automobile before he filed suit for personal injuries. When the suit was entered by him he had no cause of action against the company for damages to the automobile. This disposition by him of his right to damages to the automobile was in pursuance of a policy of insurance written for him by appellant company. It was in accordance with an agreement executed by him to make such transfer, whereby appellant would be subrogated to all of his rights to recover.

Appellant had an equitable interest in the automobile at the time of the collision by reason of having written the policy of insurance. When it was damaged, then, by virtue of the contract of insurance and the article of subrogation, appellant had such an interest in the claim for damages. This interest became a right to sue at law when appellant paid to Mr. O'Neil the amount owing him for loss under the policy and received from him assignment of his claim and was subrogated to his right to recover for damages. Therefore, when the suit was filed by Mr. O'Neil on December 16, 1909, against appellee, the cause of action for recovery for injuries sustained to his person was in Mr. O'Neil, and the cause of action to recover for damages to the automobile was in appellant. There were two distinct causes of action, two separate rights to recover, in two different persons.
* * * * * *
In the Kimball Case, as well as in the King Case, we can see that the ends of justice were conserved by requiring the parties to bring one suit for their one cause of action. But it does not seem to us that the ends of justice would be conserved in the present case by deciding that the appellant had no cause of action for damages to the automobile because Mr. O'Neil had brought his suit for personal injuries suffered by him  the only cause of action he had against appellee when the suit was filed. It would not `conserve the ends of justice,' but would work an injustice, to hold that Mr. O'Neil could, as claimed, destroy the right of appellant, vested in the manner shown above, to sue for damages to the automobile by bringing suit for injuries to his person. Appellant could not control Mr. O'Neil's course in entering suit. Appellant had no interest in his cause of action for personal injuries, but owned absolutely the right to recover for damages to the automobile.

Underwriters at Lloyd's Ins. Co. v. Vicksburg Traction Co., 106 Miss. 244, 250-52, 63 So. 455, 456-57 (1913) (emphasis added).
In Thornton v. Insurance Company of North America, 287 So.2d 262 (Miss. 1973), Mrs. Thornton's husband was killed in a collision in which his automobile collided with a Farmall tractor and cotton trailer owned by the Youngbloods. Insurance Company of North America (INA) paid Mrs. Thornton the sum of $1500.00 representing the collision coverage on the automobile, and Mrs. Thornton executed a subrogation agreement in favor of INA for the $1500.00 claim.[2]Thornton, 287 So.2d at 264. Mrs. Thornton filed a wrongful death *1067 suit against the Youngbloods and sought recovery for (1) physical pain and suffering of decedent; (2) loss of companionship and society; (3) loss of future earnings of husband and father; (4) funeral and medical expenses of decedent; (5) punitive damages; and (6) all other losses resulting from the death of Ben J. Thornton, Jr. Mrs. Thornton settled her wrongful death suit with the Youngbloods and executed a release in their favor. INA sued Mrs. Thornton alleging that she had breached their subrogation rights to recover sums paid pursuant to the policy of insurance. Regarding the $1500.00 INA paid under the collision coverage, the Court reaffirmed its holding in Vicksburg Traction Co., supra, and found that upon INA's payment of the collision coverage, INA, and not Mrs. Thornton had a cause of action for property damage to the car.
Mrs. Thornton is not liable to INA for the $1500 paid her for damage to her husband's automobile. Since INA's policy provided for subrogation, under Lloyds Ins. Co., supra, it, rather than Mrs. Thornton, had a cause of action for the amount paid for damage to the automobile.
Thornton v. Insurance Company of North America, 287 So.2d 262, 268 (Miss. 1973).
Similarly, in General Motors Acceptance Corp. v. New Orleans & G.N.R. Co., 156 Miss. 122, 125 So. 541 (1930), the surviving widow settled and executed a release to the railroad company for all damages in connection with the death of her husband. The husband's automobile was destroyed in the accident, and GMAC sued the railroad for the balance owed on the car. In allowing GMAC to pursue the tortfeasor, this Court held that the release executed by the widow did not cover damage to the personal property of the decedent. GMAC v. New Orleans & G.N.R. Co., 156 Miss. at 131, 125 So. at 543. In addition to the Mississippi authorities cited herein, the following cases from other jurisdictions recognize an insurance subrogation exception to the single cause of action rule. Fidelity & Guaranty Fire Corporation, Baltimore v. Silver Fleet Motor Express, Inc., 242 Ala. 559, 7 So.2d 290 (1942); Rosenthal v. Scott, 150 So.2d 433 (Fla. 1961); Travelers Indemnity Co. v. Moore, 304 Ky. 456, 201 S.W.2d 7 (1947); General Exchange Ins. Corp. v. Young, 357 Mo. 1099, 212 S.W.2d 396 (1948); Smith v. Hutchins, 93 Nev. 431, 566 P.2d 1136 (1977); Underwood v. Dooley, 197 N.C. 100, 147 S.E. 686 (1929); Lemieux v. American Universal Ins. Co., 116 R.I. 685, 360 A.2d 540 (1976).
The factual posture of subrogation cases is important. The case at bar is quite different from other subrogation cases which have been before this Court. In the following cases a different result was reached when the insured included within the bill of complaint a claim for property damages and then specifically released the tortfeasor for the property losses pleaded, in derogation of viable subrogation rights. See U.S.F. & G. v. Covert, 242 Miss. 1, 4, 133 So.2d 403, 404 (1961) (insured filed suit against tortfeasor seeking property damage to automobile and then specifically released tortfeasor for property losses in settlement); Chandler v. State Farm Mutual Automobile Ins. Co., 200 Miss. 702, 706, 28 So.2d 571, 571 (1947) (same); Farmer v. Union Ins. Co. of Indiana, 146 Miss. 600, 604, 111 So. 584, 585 (1927) (insured initially sued for personal and property damages; upon entry of agreed judgment insured executed release to railroad specifically releasing property claim); see also Twin States Insurance Company v. Bush, 183 So.2d 891, 892 (Miss. 1966) (insured unilaterally released tortfeasor from liability for damages to automobile in exchange for no consideration).
Returning now to the case at bar, we find that the facts and applicable law of this case parallel those in Underwriters at Lloyd's Ins. Co. v. Vicksburg Traction Co., 106 Miss. 244, 63 So. 455 (1913). Pursuant to the contract of insurance which McDonald held with Southeastern, when Southeastern paid $12,999.00 for the damage to McDonald's jeep, Southeastern owned, as of that moment, the cause of action or right to pursue BFI for McDonald's property loss. If Southeastern felt it needed a formal assignment of the *1068 cause of action from McDonald for good measure in order to solidify its subrogation rights, it had every opportunity to obtain the same.[3] It naturally follows that when McDonald executed his general release in favor of BFI on May 9, 1988, he no longer held a right to recover for property damages to his vehicle. As a matter of logic, and law, McDonald could not effect a valid release of a right which he no longer owned.
Furthermore, it is not insignificant that Southeastern, as insurer, needed to take certain steps to protect its subrogation rights  steps which Southeastern inexplicably did not take. Here, Mississippi Rules of Civil Procedure 17 comes to mind. M.R.C.P. 17(b) addresses the real party in interest in insurance subrogation cases. Southeastern, as subrogee, would had to have initiated a cause of action or joined in a pending action (M.R.C.P. 19) in its own name rather than depending upon McDonald alone to accomplish the task for it.
(b) Subrogation Cases. In subrogation cases, regardless of whether subrogation has occurred by operation of law, assignment, loan receipt, or otherwise, if the subrogor no longer has a pecuniary interest in the claim the action shall be brought in the name of the subrogee. If the subrogor still has a pecuniary interest in the claim the action shall be brought in the names of the subrogor and the subrogee.
M.R.C.P. 17(b).
While Southeastern owned outright the property damage claim upon payment to McDonald, it appears that Southeastern was still looking to its insured to safeguard its interest. Even after McDonald's counsel informed Southeastern that he had not and would not be representing its subrogation interest, Southeastern did nothing. Southeastern did not become interested in protecting its rights until it learned that McDonald had released BFI.
Therefore, for the reasons stated in this opinion, we reverse the Final Judgment,[4] in toto, entered in this case on May 22, 1989, and render judgment in favor of Gregory McDonald on the claim that McDonald breached the subrogation clause of his contract of insurance with Southeastern. Upon reversal of the Final Judgment, we note that McDonald still has a counterclaim pending against Southeastern in the lower court. Consequently, we remand this case to the Jackson County Circuit Court for further proceedings, if any, consistent with this opinion.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, ROBERTSON, SULLIVAN, PITTMAN, BANKS and McRAE, JJ., concur.
HAWKINS, P.J., specially concurs by separate written opinion, joined by ROY NOBLE LEE, C.J., and PITTMAN and BANKS, JJ.
HAWKINS, Presiding Justice, specially concurring:
I concur.
As I understand the majority, there is nothing in the opinion which suggests that when Southeastern instituted this action against both McDonald and BFI it did not as subrogee have a valid cause of action against BFI. The release executed by McDonald *1069 to BFI did not operate to release Southeastern's cause of action.
ROY NOBLE LEE, C.J., and PITTMAN and BANKS, JJ., join this opinion.
NOTES
[1] The final judgment which was entered by the lower court in the amount of $12,319.87 represented Southeastern's payment on property damage minus a small amount for recouped salvage value.
[2] INA also paid Mrs. Thornton $1000.00 representing death benefits under the policy and $614.45 under the medical coverage provisions of the policy for hospital, doctor and funeral expenses. Mrs. Thornton did not execute a subrogation agreement for these payments, but INA claimed that it was subrogated to those payments as well by operation of the insurance policy subrogation clause. Thornton v. Insurance Company of North America, 287 So.2d 262, 264 (Miss. 1973).
[3] Clearly, McDonald would have been obligated under the plain language of his insurance contract to execute and deliver whatever instruments Southeastern felt was necessary in order to protect its rights.
[4] The Final Judgment as rendered by the lower court ordered that McDonald pay unto Southeastern the sum of $12,319.87, together with costs, and McDonald's counterclaim was ordered dismissed. We note briefly in passing that even if the case had been correctly decided on the merits, the entry of a money judgment against McDonald, without an adjudication on the merits that McDonald, or Southeastern, would have recovered from the tortfeasor, violates settled law. Twin States Insurance Company v. Bush, 183 So.2d 891, 893 (Miss. 1966) (subrogee must show it could have recovered from released tortfeasor); United States Fidelity & Guaranty v. Covert, 242 Miss. 1, 11, 133 So.2d 403, 407 (1961) (same; but insured admitted tortfeasor's negligence in answer to suit brought by insurer).