621 So.2d 909 (1992)
Roy D. ALEXANDER
v.
Nollen ELZIE.
No. 89-CA-0818.
Supreme Court of Mississippi.
December 31, 1992.
Rehearing Denied August 26, 1993.
Dennis W. Voge, Mitchell Voge Beasley & Corban, Tupelo, for appellant.
Ben Logan, George E. Dent, Soper & Dent, Tupelo, for appellee.
Before HAWKINS, P.J., and PITTMAN and BANKS, JJ.
BANKS, Justice, for the Court:
Here, we are presented with the issue of whether a plaintiff is barred from pursuing a claim for personal injuries by virtue of a prior adverse judgment on the issue of the defendant's liability in a claim for property damage. The property damage claim was brought by the subrogated insurance carrier and the plaintiff, who retained an interest in the property damage claim by virtue of the deductible amount not paid by the insurer. We conclude that the trial court correctly determined that the plaintiff was a real party in interest, as opposed to a nominal party in the property damage suit, and is therefore barred from pursuing a subsequent action under the doctrines of res judicata and collateral estoppel. We affirm.

I.
This is an appeal from the Circuit Court of Lee County where a motion to dismiss was granted in favor of Nollen Elzie on June 15, 1989, on the basis of res judicata and collateral estoppel. Roy Alexander had filed a complaint against Elzie alleging that on November 11, 1984, he and Elzie were involved in an automobile collision at the intersections of Cliff Gookin Boulevard and South Thomas Street in Tupelo, Mississippi. Alexander alleged that Elzie was negligent in failing to yield the right of way, causing Alexander to be forced off the street and into a utility pole. As a result of the alleged collision, Alexander claimed that he suffered severe injuries *910 amounting to damages in the sum of $200,000.
Subsequently, Elzie filed his Motion to Dismiss pursuant to Miss.R.Civ.P. 12(b)(6) asserting that Alexander failed to state a cause of action for which relief could be granted. In his motion, Elzie submitted, inter alia, that an action had been previously prosecuted in the Circuit Court of Lee County by Alexander and Empire Fire and Marine Insurance Company (Empire) against Elzie on March 21, 1985.
The initial action was brought by Empire and Alexander to recover from Elzie the amount of property damages suffered by Alexander in the accident. Empire had paid Alexander the sum of $5,536.87 for his property loss in the accident, and thus subrogated Alexander's property damage claim to that extent. Alexander retained a $250 interest in the property damage claim, the amount of his deductible. Empire and Alexander filed suit against Elzie to recover the property damages. Alexander did not have separate counsel, but he was a named party, and he sat at the counsel table during the trial in addition to participating as a witness. The court entered a judgment against Alexander and Empire in accordance with a jury verdict favoring Elzie. Alexander appealed that judgment to this Court, which affirmed.

II.
Where a claim has been previously litigated, all grounds for, or defenses to recovery that were available to the parties in the first action, regardless of whether they were asserted or determined in the prior proceeding, are barred from re-litigation in a subsequent suit under the doctrine of res judicata. Dunaway v. W.H. Hopper & Assoc., 422 So.2d 749 (Miss. 1982) Res Judicata and the issue of splitting a cause of action are closely related. Rosenthal v. Scott, 150 So.2d 433, 436 (Fla. 1963) (citing 1 Fla.Jur., Actions, Sec. 42). Mississippi is among the majority of states which does not allow splitting a cause of action. Kimball v. Louisville and National Railroad Co., 48 So. 230 (Miss. 1909).
The rule against splitting a cause of action and the reasons for it, is stated in Restatement, Judgments, § 62:
§ 62 SPLITTING CAUSE OF ACTION  JUDGMENT FOR PLAINTIFF OR DEFENDANT.
"Where a judgment is rendered, whether in favor of the plaintiff or of the defendant, which precludes the plaintiff from thereafter maintaining an action upon the original cause of action, he cannot maintain an action upon any part of the original cause of action, although that part of the cause of action was not litigated in the original action, except * * *.
"(c) where the defendant consented to the splitting of the plaintiff's cause of action.
"Comment:

a. Rationale: The rule stated in this Section is based on the idea that where a person has a single cause of action, in the interests of convenience and economy to the public and to the defendant he should be entitled to but one right of action and hence should be required to unite in one proceeding all matters which are part of it.
In Kimball, supra, at 231, this Court quoted with approval, language from the case of King v. Chicago, M. & St. P.R. Co., 80 Minn. 83, 82 N.W. 1113, 50 L.R.A. 161, 81 Am.St.Rep. 238, which stated: "[a] rule of construction should be adopted which will most speedily and economically bring litigation to an end, if at the same time it conserves the ends of justice. There is nothing to be gained in splitting up the rights of an injured party ... and much may be saved if one action is made to cover the subject."
Alexander urges this Court to extend an exception to the general rule against splitting that was recognized in the case of Underwriters at Lloyds Insurance Co. v. Vicksburg Traction Co., 106 Miss. 244, 63 So. 455 (1913); Thornton v. Insurance Co. of North America, 287 So.2d 262 (Miss. 1973) and Rosenthal v. Scott, 150 So.2d 433 (Fla. 1963).
*911 In Kimball, Mr. Kimball was injured by a train while attempting to cross a railway track with his mule and wagon. He initially brought suit and recovered a judgment for damages to his horse and wagon. Subsequently, he brought suit to recover for personal injuries sustained. We held that where a person received injuries to both person and property by the same tortious act, only one single cause of action arose.
In Vicksburg Traction, this Court distinguished Kimball, where a plaintiff assigns all of his rights and interests in his property to an insurance company and then later brings suit against the defendant for personal injuries.
We see a difference between this case and the Kimball case. Mr. Kimball brought both suits against the railroad company. The entire cause of action was in him when he filed his first suit for damages done to his personal property and when he sued to recover for injuries to his person. He himself split his cause of action, which all along was wholly in him. This is not so in the case now before us. Mr. O'Neil had assigned all of his rights and interest against the traction company for damages to his automobile before he filed suit for personal injuries. When the suit was entered by him he had no cause of action against the company for damages to the automobile. This disposition by him of his right to damages to the automobile was in pursuance of a policy of insurance written for him by appellant company. It was in accordance with an agreement executed by him to make such transfer, whereby appellant would be subrogated to all of his rights to recover.
* * * * * *
Appellant had an equitable interest in the automobile at the time of the collision by reason of having written the policy of insurance. When it was damaged, then, by virtue of the contract of insurance and the article of subrogation, appellant had such an interest in the claim for damages. This interest became a right to sue at law when appellant paid to Mr. O'Neil the amount owing him for loss under the policy and received from him assignment of his claim and was subrogated to his right to recover for damages. Therefore, when the suit was filed by ... O'Neil, ... against appellee, the cause of action for recovery for injuries sustained to his person was in O'Neil and the cause of action to recover for damages to the automobile was in appellant. There were then two distinct causes of action, two separate rights to recover, in two different persons.
63 So. at 456.
The Court asserted that its intent was not to disturb the rule in Kimball. Id., at 457.
In Thornton, a husband was killed when his car struck a tractor and cotton wagon. The insurance company (INA) paid the widow for damages to the automobile and received the right of subrogation to all of the insured's right of recovery. Subsequently, the widow settled their wrongful death claim with the owners of the tractor and signed a release with them. Additionally, she signed a partial release with the defendants for the consideration of $45,000 paid Mrs. Thornton as guardian of a minor child. The insurance company filed suit alleging that Mrs. Thornton breached the subrogation provisions of the policy when she consented to a judgment against the Youngbloods, thus precluding them from collecting the subrogated claims. This Court held that she was not liable to INA for the $1500 paid to her for damage to her husband's vehicle. "Since INA's policy provided for subrogation, under Lloyds Ins. Co., it, rather than Mrs. Thornton had a cause of action for the amount paid for damage to the automobile." 287 So.2d at 268.
In the case of Rosenthal v. Scott, 150 So.2d 433 (Fla. 1963), the Florida Supreme Court also recognized an exception to the rule against splitting a cause of action in similar circumstances. The court reasoned:
If a so-called subrogated insurer must wait for perhaps several years to recover the money which it has advanced for the property damage or by filing its claim can force the injured person to bring a *912 personal injury action prematurely, before the total extent of his injuries are known, then, and in that event, there is something wrong with the law. We can not be persuaded that we should create a truism out of the hackneyed saw: `It's all law and no justice'.
150 So.2d at 438-439.

III.
We find the cases cited by Alexander inapposite and his contention that he was but a nominal party meritless. While it is true that a separate cause of action can be maintained in those cases where an insured has subrogated `all' of his rights to an insurance company as was evinced in the cases relied on by Alexander, the same is not true where the insured retains a portion of his interest.
Miss.R.Civ.P. 17(b) provides:
In subrogation cases, regardless of whether subrogation has occurred by operation of law, assignment, loan receipt, or otherwise, if the subrogor no longer has a pecuniary interest in the claim the action shall be brought in the name of the subrogee. If the subrogor still has a pecuniary interest in the claim the action shall be brought in the names of the subrogor and the subrogee. (Emphasis added)
As the rule is interpreted in Federal courts, if an insurer has paid the entire claim, it is the real party in interest who must sue in its own name. 6 Wright and Miller, Federal Practice and Procedure, Civil § 1546 (1971) An insurer who merely pays a part of the loss is deemed partially subrogated to the right of the insured. This can occur in situations such as here where the insurance policy contains a deductible which must be paid by the insured. In these instances, the rights of the parties parallel that of a partial assignment. See gen. U.S. v. Aetna Cas. & Surety Co., 338 U.S. 366, 380-81, 70 S.Ct. 207, 215-16, 94 L.Ed. 171, 185 (1949) "Either the insured or the insurer may sue in his own name. Thus, if the insured brings suit, the insurer who is partially subrogated may intervene in the action to protect his pro rata share of the potential recovery. If either sues and the other is not voluntarily joined or intervened, defendant may protect himself from multiple law suits by having the absent party joined." Id., at 381-382, 70 S.Ct. at 215-216.
Alexander maintains that in the property damages suit against Elzie, he was merely a nominal party seeking recovery of his deductible. Moreover, that he had no control over the suit and that he only became a party because he was persuaded by the insurance company. The fact is, however, that Alexander was not a nominal party but instead, a real party in interest to the property damages suit by virtue of his live claim for $250.
A case involving similar facts has been decided by a New York appellate court. In Kisielewicz v. Mullins, 28 A.D.2d 680, 280 N.Y.S.2d 715 (1967), the New York Supreme Court Appellate Division, found that a judgment in a prior action against a defendant was res judicata with respect to issues of negligence, inter alia, where the earlier action litigated both the subrogation claim of the plaintiff's insurance carrier as well as the plaintiff's claim for damages which were not reimbursed by the insurer because of a deductible damage clause. The Court held that the plaintiff was a real party in interest as a result of his involvement in the initial suit.
Alexander relies on the case of Palmer v. Clarksdale Hospital, 213 Miss. 611, 57 So.2d 476 (1952) to assert that his case is not barred by res judicata. In Palmer, we allowed a husband to bring a second suit against a hospital for loss of consortium arising out injuries his wife sustained due to the hospital's negligence. The wife had initially brought suit for injuries sustained. The Court held that the two actions were different and could be maintained because the husband did not have a pecuniary interest in the outcome of the prior litigation notwithstanding that he sat at the counselor's table during trial, conferred with his wife's attorney's during jury selection, appeared as a witness and paid incurred expenses. 57 So.2d at 491.
*913 The Palmer rule has been abrogated by the case of McCoy v. Colonial Baking Co. Inc., 572 So.2d 850 (Miss. 1990). In McCoy, a husband brought a second suit against Colonial for loss of consortium after his wife was injured in an automobile accident with an employee of Colonial. The lower court held that the husband was collaterally estopped from relitigating the negligence issue in his action. 572 So.2d at 851. Citing from the case of Choctaw v. Wichner, this Court affirmed in part and reversed and remanded in part the decision of the lower court. This Court adopted the majority approach by moving away from the out dated Palmer decision: "[O]ur neighbor Arkansas ... reasoned that the husband's right to such damages for loss of consortium was derivative, and that it was only logical that since the husband's cause of action was derivative he could have no better standing in court than his wife had." 521 So.2d 878, 881 (Miss. 1988) (emphasis added).
The four factors necessary to apply res judicata are present in this case. See gen. Dunaway v. W.H. Hopper & Assoc., Inc., 422 So.2d at 751. Moreover, collateral estoppel precludes parties "from relitigating a specific issue actually litigated, determined by, and essential to the judgment in a former action, even though a different cause of action is the subject of the subsequent action." Id. Alexander's claim is, therefore, barred by the doctrine of collateral estoppel in that the liability issue has already been determined by a jury.
For the foregoing reasons the judgment of the circuit court is affirmed.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, PITTMAN, JJ., concur.
McRAE, J., dissents with separate written opinion joined by DAN M. LEE, P.J., and SULLIVAN, J.
ROBERTS, J., not participating according to Supreme Court Internal Rules.
McRAE, Justice, dissenting:
Four months ago, when the shoe was on the other foot, we took a different view from that espoused today by the majority and found an exception to the rule against splitting causes of action when insurance was involved, particularly when both property damage and personal injuries were involved.
In McDonald v. Southeastern Fidelity Insurance Co., 606 So.2d 1061 (Miss. 1992), there was a slight difference in the factual situation, that is, the insured sued the negligent party only for personal injuries and not for the property damage, and then signed a release. The insurance company sued its insured to recover $12,999.00 it had paid for his property damage claim, and stated that its rights had been significantly altered as a result of a release being executed for personal injury and all claims.
In McDonald, we cited all the familiar cases which the majority now cites, but held instead that:
However, like most rules of law, exceptions have been carved. One such exception exists where one element of the damage, usually property damage, is the subject of insurance while the remaining elements of damage are not. This exception was explained in the following annotation:
In some jurisdictions which follow the rule that a single cause of action arises from an injury which causes both personal injury and property damage, an exception has been drawn in cases where one element of the damage, usually the property loss, is the subject of insurance, and strict application of the single-cause principle would prejudice the interest of either the insured or the insurer. Thus, the courts which have applied this exception to the general rule against splitting causes of action have held that in situations in which an injured party has assigned one element of his cause of action to his insurer to which the insurer thereby becomes subrogated, and thereafter, either the injured party or his insurer obtains a judgment against *914 the tortfeasor on the one element of the damage, neither the insured nor his insurer is barred from maintaining an action against the tortfeasor on the remaining element of the damage.
Andrea G. Nadel, Annotation, Simultaneous Injury to Person and Property As Giving Rise to Single Cause of Action  Modern Cases, 24 A.L.R. 4th 646, 650 (1983).
The policy reasons behind the exception are apparent. A subrogated property damage claim is often ripe for final disposition long before the personal injury claim. In the usual automobile accident case, the extent of property damage can be quickly ascertained, but personal injuries requiring medical treatment could result in a prolonged process involving months or even years. Consequently, the insurance subrogation exception promotes prompt settlement of property claims between an insured and his carrier without prejudicing either the insured's right to sue the tortfeasor for personal injuries or the insurer's right to bring a subrogated property claim against the tortfeasor. Lemieux v. American Universal Ins. Co., 116 R.I. 685, 360 A.2d 540, 544 (1976).
McDonald, at 1065.
The majority cites cases decided prior to the adoption of the Mississippi Rules of Civil Procedure, but fails to note that in adopting those rules in 1981, we overruled all prior cases which contravene the Rules. The majority further relies on Rule 17(b) which, in effect, requires an insurer, where a deductible is involved, to sue not only in its name, but in its insured's name. The insured is required under the contract of insurance to cooperate with its insuror. By the same token, the use of the word "shall" in Rule 17 mandates that Empire require its insured, Alexander, to be a nominal party. However, a review of Rule 13 reveals an anomaly in the Rules, to wit: when the insured is being sued, he does not have to bring his mandatory counterclaim for personal injury when he is being defended by an insurance company. Since we so recently held that there is an exception, I would again hold as we did then that it would be to the best interests of both the insuror and the insured that this cause of action be split.
In McDonald, we cited myriad reasons for creating an exception to the rule and allowing a split in the cause of action when multiple insurance claims are involved. In support of the position, we cited numerous decisions by this Court and other jurisdictions, noting that:
In addition to the Mississippi authorities cited herein, the following cases from other jurisdictions recognize an insurance subrogation exception to the single cause of action rule. Fidelity & Guaranty Fire Corporation, Baltimore v. Silver Fleet Motor Express, Inc., 8 Div. 166 [242 Ala. 559], 7 So.2d 290 (Ala. 1942); Rosenthal v. Scott, 150 So.2d 433 (Fla. 1961); Travelers Indemnity Co. v. Moore, 304 Ky. 456, 201 S.W.2d 7 (1947); General Exchange Ins. Corp. v. Young, 357 Mo. 1099, 212 S.W.2d 396 (1948); Smith v. Hutchins, 93 Nev. 431, 566 P.2d 1136 (1977); Underwood v. Dooley, 197 N.C. 100, 147 S.E. 686 (1929); Lemieux v. American Universal Ins. Co., 116 R.I. 685, 360 A.2d 540 (1976).
McDonald, at 1067.
In McDonald, we observed that "McDonald would have been obligated under the plain language of his insurance contract to execute and deliver whatever instruments Southeastern felt was necessary in order to protect its rights." 606 So.2d at 1068, fn. 3. It also should be noted that McDonald was contractually obligated to cooperate with his insurance company. Thus, if his insurance company saw fit to file suit immediately, rather than waiting for him to file his personal injury case, McDonald would have lost his important rights to have counsel of his choice and to wait until his damages matured before embarking upon any necessary litigation. Further, as we stated in McDonald, there are numerous policy reasons behind creating an exception to the single cause of action:
The policy reasons behind the exception are apparent. A subrogated property damage claim is often ripe for final *915 disposition long before the personal injury claim. In the usual automobile accident case, the extent of property damage can be quickly ascertained, but personal injuries requiring medical treatment could result in a prolonged process involving months or even years. Consequently, the insurance subrogation exception promotes prompt settlement of property claims between an insured and his carrier without prejudicing either the insured's right to sue the tortfeasor for personal injuries or the insurer's right to bring a subrogated property claim against the tortfeasor. Lemieux v. American Universal Ins. Co., 116 R.I. 685, 360 A.2d 540, 544 (1976). A contrary rule would discourage prompt settlements by requiring the injured plaintiff to wait and bring all of his claims in one lawsuit and not settle the property damage claim with his own carrier as soon as practicable. McKibben v. Zamora, 358 So.2d 866, 868 (Fla.App.3d 1978). In addition to benefitting the insured, the carrier is also benefitted since its reputation is dependent in part upon the timely payment of claims.
McDonald, at 1065.
Because we should strive for consistency in our decisions and adopted a completely contrary position only four months ago, I dissent.
DAN M. LEE, P.J., and SULLIVAN, J., join this opinion.